**Arnold N. BENARD**

**v.**

**Roger Thomas HOFF, Sr., et al.**

**Civ. No. PN–87–3207.**

United States District Court,
D. Maryland.

Dec. 7, 1989.

James E. Edwards, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, Md., and Douglas V. Rigler, Kaplan, Russin & Vecchi, Washington, D.C., for plaintiff.

Gerald F. Treanor, Jr., Amy Berman Jackson, Bruce L. Corriveau, Venable, Baetjer, Howard and Civiletti, Washington, D.C., and Lawrence L. Bell, Schulman, Rogers, Gandel, Tobin & Ecker, P.A., Rockville, Md., for defendants.

## OPINION AND ORDER

NIEMEYER, District Judge.

The Court is called upon in this case to visit again those two issues that have repeatedly presented themselves in cases purporting to allege claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.:* (1) what relationship is required between a RICO defendant and an enterprise to satisfy the requirements of the statute, and (2) what constitutes a pattern. *See* 18 U.S.C. §§ 1961(4) and (5); 1962(a), (b) and (c). The defendants in this case have raised these issues in a motion to dismiss the RICO counts of the complaint. For the reasons given hereafter, the Court concludes that an appropriate relationship between the defendants and an enterprise has been alleged but that a pattern has not. Therefore the RICO counts will be dismissed.

### I

### FACTS OF THE COMPLAINT

Arnold Benard, who was experienced in developing computer software for use in "one-call systems" was hired by the defendant Roger Hoff in August 1984 to become president of Hoff's company, One–Call Technologies, Inc. (OCT). A one-call system is a communications system established for the purpose of providing one telephone number (that of a "one-call center") for excavators and the general public to call to give notification of their plans to excavate, tunnel, or demolish structures at a particular site where underground utilities might exist. The one-call center processes the notification information and disseminates it to the system's participating members who might be affected by the work, so that they can take steps to avoid damage to the underground utilities. Benard had developed a program he calls the "Benard Program" that applied computer technology to the operation of a one-call system, and Hoff considered this valuable to his one-call business, One–Call Concepts, Inc. (OCC). Hoff owned the stock of both OCT and OCC. OCT was formed to market the technology, and OCC was formed to manage the ongoing operation of one-call centers.

At the time that Hoff hired Benard in August 1984, they spoke of a "joint business venture in corporate form which would combine Benard's expertise in computerization of one-call systems with Hoff's experience in the negotiation and operation of one-call systems." Benard was to become owner of one-half of the stock of OCT and he was to become an officer and director. OCT was to work in cooperation with OCC to develop the business.

In May 1987, about two and one-half years after Benard become president of OCT, he was discharged. At that time he had not received one-half interest in OCT and had not become a director.

Shortly thereafter Benard filed this action against Hoff, OCT and OCC alleging in a 14–count complaint that the defendants breached contractual obligations, committed fraud for purposes of obtaining his know-how, converted his know-how and technology to their own use, and committed related torts. Counts 10, 11 and 12 allege violations of RICO, 18 U.S.C. §§ 1962(a), (b) and (c), respectively.

The defendants have moved to dismiss the RICO counts on the basis of two arguments. First, they contend that the complaint fails to allege the involvement of defendants with an enterprise as required by 18 U.S.C. §§ 1962(a), (b) and (c). And second, they contend that the scheme alleged did not constitute a pattern as required by RICO.

The issues have been briefed and argued, and the Court has received and considered supplemental memoranda.

## II

### ENTERPRISE REQUIREMENT

In the allegations common to all RICO counts, the plaintiff identifies the enterprises that he believes satisfy the requirements of RICO. Paragraphs 82 and 83 in particular state:

82. For purposes of 18 U.S.C. §§ 1961 and 1962 OCC constitutes an enterprise engaged in interstate commerce and in activities that affect interstate commerce.

83. Hoff, OCC and Dale Swindler constitute an association in fact and therefore an enterprise for purposes of 18 U.S.C. §§ 1961 and 1962, and are engaged in interstate commerce and in activities that affect interstate commerce.

Thus in paragraph 82, OCC, which is also a defendant, is specified as the enterprise. And in paragraph 83 the plaintiff alleges that the enterprise is an association-in-fact of two individuals (Hoff and Swindler) and one corporation (OCC). Hoff and OCC are two of the defendants and Swindler was an employee of a software firm and later an employee of OCC who allegedly assisted the defendants in usurping plaintiff's software program.

In their motion to dismiss the RICO counts, the defendants argue that "Congress did not intend to prohibit activities by a 'person' in connection with an 'enterprise' when the 'person' and the 'enterprise' are one and the same." They refer the Court to *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied*, 495 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), and *Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.*, 819 F.2d 1279, 1287 (4th Cir.1987). These cases stand for the proposition that the RICO defendant must have an identity separate and distinct from the RICO enterprise.

Defendants argue that because the complaint names OCC as a defendant and, in paragraph 82, also designates OCC as an enterprise, the RICO claims must be dismissed. Likewise, they note that in paragraph 83 Hoff and OCC, who are defendants, are also described as members of an association-in-fact that is designated as an enterprise.

In response, the plaintiff argues that the complaint should be construed so that in one instance Hoff is the defendant, and OCC and the association-in-fact of Hoff, OCC and Swindler are enterprises. And in another instance, OCC is the defendant and the association-in-fact of Hoff, OCC and Swindler is the enterprise. He contends that the holding of *United States v. Computer Sciences Corp., supra*, does not "disallow such treatment."

To understand the relationship specified by RICO between a RICO defendant and an enterprise, it is useful to review the purpose of the act and its operative language.

RICO was enacted in 1970 for the purpose of eliminating "the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969), U.S.Code Cong. & Admin.News 1970, 4007. In its statement of findings contained in the preface to the act, the Congress described the relationships between members of organized crime and enterprises that were to become the object of RICO: "[O]rganized crime derives a major portion of its power through money obtained from ... illegal endeavors ...; this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions ...; organized crime activities ... harm innocent investors and competing organizations, [and] interfere with free competition ..." Organized

Crime Control Act, Pub.L. No. 91–452, 84 Stat. 922–23 (1970).

By analyzing § 1962, these described objectives can be traced directly to the language of the statute. Thus § 1962(a) is aimed at the *use of racketeering proceeds* to infiltrate an enterprise. It provides in essential part:

(a) It shall be unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise....

Section 1962(b) is aimed at the *use of racketeering activity* itself (as distinguished from use of illegal *proceeds*) to acquire or maintain an enterprise. It provides in essential part:

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain ... any interest in or control of any enterprise....

Finally, § 1962(c) is aimed at the *use of an enterprise* to carry out racketeering activities. It provides in essential part:

(c) It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity....

■ Thus RICO requires a specified relationship between the RICO defendant and an enterprise. Either the enterprise must be the object or goal of the racketeering activity (§§ 1962(a) and (b)), or it must be a tool utilized to carry out racketeering activity (§ 1962(c)).

Whatever relationship between defendant and enterprise is relied on to state a RICO claim, it is apparent that inherent in the required relationship is a participation of both a RICO defendant *and* an enterprise as two separate persons. It is seemingly nonsensical to suggest that a cause of action can be alleged against a defendant who uses racketeering activities to obtain control over himself or who associates with himself to carry on racketeering

activities. It is established therefore that defendant and enterprise cannot be one and the same. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir. 1982), *cert. denied*, 495 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

■ Accordingly, in this case to the extent that the plaintiff seeks to state a claim that the defendant OCC violated RICO by its association with itself as the enterprise, as may be suggested in paragraph 82 of the complaint, he fails to state a cause of action.

In paragraph 83, however, the plaintiff alleges more clearly that two of the defendants in association with each other and with a third non-party individual constitute an enterprise. He alleges that the defendants in association with this defined enterprise carried on a pattern of racketeering activity.

■ When one keeps in mind the initial object of RICO to reach organized crime activities, which, by the nature of the activities, do not involve the use of formal partnership agreements, utilization of broad language in the statute becomes explainable. That is not to suggest, however, that the language becomes any more susceptible to a singularly proper interpretation. Nevertheless, one would expect that if three Mafia heads agreed informally to carry on a pattern of racketeering activity, each could be sued as a RICO defendant in association with the enterprise made up of the three of them. Section 1962(c) thus declares it to be unlawful for any person "associated with *any* enterprise to participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." (Emphasis supplied.) The statute does not restrict the enterprise to one which excludes the defendant—indeed to conclude that it does would of necessity lead to obliteration of the prohibition of § 1962(c) which relies on the *association* of the defendant with the enterprise. The Court concludes that the enterprise, which by definition includes any "union or group of individuals associated in fact" (§ 1961(4)), may include the defendant as

one of its members, so long as the enterprise is different from the defendant. If the enterprise is a corporation, the defendant must be a person different from the corporation. On the other hand, if the enterprise is a group of individuals, the defendant may be one of its members so long as his relationship with the enterprise satisfies one of the three sections, §§ 1962(a), (b) or (c).

In this case the transactional facts that are alleged would satisfy the required relationship with an enterprise in that the RICO defendants Hoff and OCC used the enterprise OCT to obtain control over plaintiff's software program by having OCT hire plaintiff and later fire him when the software was obtained. The complaint, however, does not plead this relationship. Plaintiff pleaded a different relationship in its attempt to satisfy what he felt were the requirements of RICO. He alleged that Hoff and OCC as defendants associated with an enterprise consisting of Hoff, OCC and Swindler to carry out a pattern of racketeering activity. Both Hoff and Swindler are individuals and could be associated to constitute an enterprise. 18 U.S.C. § 1961(4). Corporations cannot under RICO associate in fact to constitute an enterprise. On the other hand, each corporation constitutes an enterprise in its own right with which a defendant might associate.

Thus, while the most probable relationship between a RICO defendant and an enterprise is not alleged in this complaint, that which is alleged in paragraph 83 satisfies the requirements of RICO, if we read only Hoff and Swindler as the association-in-fact. The RICO counts, therefore, will not be dismissed on the basis that the necessary relationship with an enterprise has not been alleged.

### III

### PATTERN

Liability under RICO also requires a showing that the defendant engaged in a "pattern of racketeering activity" or that he pursued collection of an unlawful debt.

*See* 18 U.S.C. §§ 1962(a), (b) and (c). Both the terms, "pattern" and "racketeering activity," are defined (§ 1961(5) and (1)) and together form the principal core of that which elevates otherwise illegal conduct to conduct proscribed by RICO with its enhanced sanctions of treble damages and attorneys' fees. See 18 U.S.C. § 1964(c).

The definition of "pattern" given by the statute adds little, other than to require "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Nothing in the legislative history or in the decisions published since enactment suggests that the term pattern is intended to be used in a manner other than commonly understood in the language. The temptation thus is to yield to a criterion that is based on "I-know-it-when-I-see-it," but that can hardly be useful in measuring the adequacy of a complaint.

In a common sense understanding, one recognizes a pattern on wallpaper, for example, which is being unrolled, when he has seen enough to discern repetition and to anticipate similar images on the paper were it to be unrolled further. In a similar analogy, it is axiomatic that one point cannot be the basis for plotting a graph. While two points will plot a line, something more would be required to depict a pattern so that one could predict or anticipate the placement of the third point. Pattern in these examples is thus a relationship of multiple images or points from which one can discern a larger order of repetition or predict that which is yet undefined.

In *H.J. Inc. v. Northwestern Bell Tel. Co.*, — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court described just this process of providing a common sense definition of pattern. The aspects of pattern that are described there are summarized in a particularly well organized fashion by Judge Wilkinson in *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683–84 (4th Cir.1989):

> The *H.J. Inc.* Court reaffirmed that "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* [109 S.Ct.]

at 2900 (emphasis in original). Predicate acts are related if they have " 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 2901, *quoting* 18 U.S.C. § 3575(e).

Continuity, in turn, refers "either to a closed period of *repeated* conduct, or to past conduct that by its nature projects into the future with a threat of *repetition.* *Id.* at 2902 (emphasis added). To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or ... otherwise constitute a threat of, *continuing* racketeering activity." *Id.* at 2901 (emphasis in original). Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 2902. *See also id.* (continuity requires activity over a "substantial period of time"); *id.* at n. 4 (continuity requires "long-term criminal activity"). Thus, predicate acts must be part of a prolonged criminal endeavor.

In articulating the "continuity plus relationship" test, the *H.J. Inc.* Court endorsed a commonsensical, fact-specific approach to the pattern requirement. *Id.* at 2899, 2902. Accordingly, the *H.J. Inc.* Court rejected, as had this court and most other circuits, the rigid notion that predicate acts form a pattern only when they are part of separate illegal schemes. 109 S.Ct. at 2899–2901 & n. 3. *See also International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 155 (4th Cir.1987). The Court observed that "multiple predicates within a single scheme" may indeed constitute criminal activities which have long-term and widespread consequences—the very acts RICO was intended to prohibit. 109 S.Ct. at 2899. Predicate acts which arise under a single scheme, then, may be a pattern for RICO purposes if they are continuous and related. Again, however, the test is commonsensical, not formulaic. *Id.*

■ Thus, when looking at the totality of circumstances, one must be able to conclude that a pattern exists by looking historically at conduct to determine whether it is characterized by repetitiveness, not in the sense that each act is completely duplicated, but that the multiple acts of racketeering are related and have revealed a continuity. Any of various aspects of the multiple racketeering activities can be scrutinized to discover a repetitiveness or similarity, such as methods utilized, purposes of the conduct, the participants, the victims, and the results achieved. Likewise, a pattern exists if the conduct known is characterized by aspects that anticipate future repetition, again not in the sense of complete duplication, but in relatedness.

When viewed in this method, it is readily apparent that pat formulae for defining a pattern are no more available than they would be for defining negligence with any specificity. Each presentation of at least two predicate acts of racketeering must be scrutinized on a case-by-case approach to answer the question, does the conduct amount to a pattern. While the analysis will be "commonsensical and not formulaic," the approach described in *H.J. Inc.* and *Menasco,* the answer will only emerge on the tapestry of common law developed from facts in particular cases.

■ In this case the plaintiff alleges a series of predicate acts involving at least nine interstate mailings and at least eighteen interstate communications by telephone, each of which is alleged to constitute interstate fraud in violation of 18 U.S.C. §§ 1341, 1343 or 2314. These acts of fraud continued over the period from December 1984 to November 1987. While formulistically it could be concluded that these acts constituted a pattern, when examined in the totality of the circumstances, they are but parts of the scheme by defendants to obtain from plaintiffs the Benard Program to use in the one-call business for protecting underground utilities. Plaintiff describes the scheme that it purports to allege in paragraph 77 of the complaint as follows:

The substantial terms of defendants' violation were to obtain through fraudulent means valuable proprietary information and intellectual property that Benard (while retaining an equitable interest therein) had given to OCT, to wit, the Benard Program; to convert the Benard Program to the personal use of Hoff, OCC and others; and to sell the Benard Program to customers throughout the United States, through the use of wire, mail, and interstate transportation.

While plaintiff is careful to allege multiple acts of interstate fraud, he defines one scheme that has not in the past been repeated nor is likely, from the acts alleged, to be repeated in the future. To acquire the Benard Program was one goal that was achieved. Once this was accomplished, the predicate acts themselves did not include a "specific threat of repetition" by the defendants to obtain other proprietary data from the plaintiff or from others. Nor is there any indication that the predicate acts were "a regular way of conducting defendant[s]' ongoing legitimate business." *H.J. Inc.*, — U.S. at —, 109 S.Ct. at 2902.

Applying the standards that have been described herein, the Court concludes that the aspects of the scheme which reveal one goal, directed against the same plaintiff, which when achieved would lead to no further conduct, dominate over the multiple acts. Under a common sense definition, pattern is not presented here. This conclusion, of course, recognizes that multiple schemes are not necessary to establish a RICO pattern. *See H.J. Inc.* at —, 109 S.Ct. at 2900–02. The single scheme pleaded here simply does not suffice.

There is no doubt that the defendants repeatedly made phone calls, each of which might support a claim for interstate fraud. But these repetitive acts do no more than to delineate a singular purpose to obtain a discreet area of know how from a single victim, with no facts alleged to suggest that the scheme can be anticipated to continue into the future or to repeat itself. The Court concludes that a pattern is thus not alleged by the complaint and that a

cause of action under RICO has not been stated.

For the reasons given in this Opinion, it is hereby ORDERED this 7th day of December, 1989, that:

1. Defendants' motion to dismiss counts ten, eleven and twelve is granted and those counts are hereby dismissed from the complaint.