**John BUSBY, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**CROWN SUPPLY, INC.; Hammermill Paper Co.; Omer Fortier; Kevin McClamroch; Bruce Lang; Michael Almeida; Linda Ambrus; Richard D. Childers; Richard Reeves, Defendants–Appellees.**

No. 88–2521.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1988.

Decided Feb. 20, 1990.

834

William Francis Krebs (B.G. Stephenson, Stephenson & Balthrop, Ltd., Fairfax, Va., on brief), for plaintiff-appellant.

Howard Adler, Jr. (Timothy M. Tymkovich, Davis, Graham & Stubbs, Washington, D.C., Thomas F. Farrell, II, McGuire, Woods, Battle & Boothe, McLean, Va., on brief), for defendants-appellees.

Before PHILLIPS and SPROUSE, Circuit Judges, and WINTER, Senior Circuit Judge.[1]

HARRISON L. WINTER, Senior Circuit Judge:

The district court granted a motion to dismiss made under Rule 12(b)(6), Fed.R. Civ.P., in plaintiff's private civil RICO action against his employer, Crown Supply, Inc. (Crown), its parent corporation, Hammermill Paper Company (Hammermill), and certain of their officers, and dismissed plaintiff's complaint against all defendants. Plaintiff appeals and we reverse and remand for further proceedings.

---

**1.** An issue in this appeal is whether our decision in *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4 Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), bars plaintiff's suit and if so, whether *Computer Sciences* should be overruled. By order entered October 6, 1989, the court decided to consider this issue in banc without additional oral argument. The parties were granted leave to file supplemental briefs and they have done so. The issue considered in banc is discussed in Part IV of the opinion. The additional members of the in banc court are Chief Judge Ervin and Circuit Judges Russell, Widener, Hall, Murnaghan, Chapman, Wilkinson and Wilkins.

## I.

Plaintiff, John Busby, sues in his own behalf and on behalf of all current and former sales representatives of Crown. He alleges that for over twenty years he was a sales representative of Crown and like other sales representatives—numbering approximately one hundred—he was paid on a commission basis, i.e., a percentage of the difference between the retail price of goods he sold and the cost of the goods to Crown. At least monthly, he and the other commissioned sales representatives were provided with "price books" that purported to set forth the cost of various goods to Crown, certain adjustments to reflect administrative and overhead costs, and a suggested retail price.

Plaintiff alleges that at some time over ten years ago, certain officers and executives of Crown formulated a scheme to represent falsely to the sales force that the cost to Crown of certain items was higher than actual cost. By this device, Crown was able to reduce the apparent difference between the cost of goods and the sales price and thereby decrease the amount of commission paid to members of the sales force in violation of the agreement with them.

Plaintiff further alleges that in 1980 the principal stockholder of Crown sold his stock to Hammermill, which has operated Crown as part of its nationwide business. After acquiring Crown, Hammermill not only continued the false price book scheme, but it solicited "rebates" from Crown suppliers. Those rebates were based upon the amount of purchases Crown made from those suppliers. The suppliers were directed to send the rebates directly to Hammermill in Erie, Pennsylvania in order to conceal the existence of the program from the Crown salesmen. The effect of the rebate program was to pass savings directly to Hammermill and to avoid the payment of commissions to salesmen based upon true profit.

Plaintiff sued under 18 U.S.C. §§ 1962(a), 1962(c) and 1964(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO), and he also alleged two pendent state law claims. Briefly stated, § 1962(a) makes it unlawful for a person who has received income from a "pattern of racketeering activity" to "use or invest" such income in an enterprise engaged in or affecting interstate or foreign commerce. Section 1962(c) prohibits any person "employed by or associated with" such an enterprise from conducting its affairs through "a pattern of racketeering activity," and § 1964(c) provides that any person "injured ... by reason of a violation of section 1962" may sue therefor in federal court and recover triple damages, attorney's fees and costs.

The district court granted defendants' Rule 12(b)(6) motion for several reasons. First, it ruled that plaintiff's allegations of a RICO violation failed to establish a pattern of racketeering activity. The court held that the alleged acts constituted a single fraudulent scheme and therefore failed to establish the requisite pattern. With the RICO counts dismissed, the district court also dismissed the pendent state law claims because they lacked an independent basis for federal jurisdiction.

As alternative grounds for its dismissal of the RICO claims, the district court suggested that dismissal might be required by *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4 Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), because the complaint named Crown and Hammermill as defendants and a division of Hammermill and Crown as the enterprise. The district court read *Computer Sciences* to hold that the "person" charged with a violation of § 1962(a) must be separate and distinct from the RICO "enterprise." However, because conflicting affidavits had been filed on whether Crown or a division of Hammermill was an incorporated division of Hammermill, the district court perceived an issue of fact regarding the exact corporate structure of Hammermill and so made no definite ruling as to whether suit was barred by *Computer Sciences*. The district court did rule, however, that the RICO claims should be dismissed because plaintiff suffered no injury arising from a

§ 1962(a) violation, and adopted the reasoning of *Gilbert v. Prudential–Bache Securities, Inc.,* 643 F.Supp. 107 (E.D.Pa.1986).

After the appeal was argued, the panel stayed its decision pending decision by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). After *Northwestern Bell* was decided, the parties filed supplemental briefs as to the effect of that decision on the instant case. We then concluded to reconsider *Computer Sciences* in banc, and the parties were requested to file and did file supplemental briefs as to it. The appeal is therefore now ready for decision.

## II.

The first issue that we address is whether the district court's ruling on the pattern of racketeering activity issue can stand when viewed in light of the holding and discussion in *Northwestern Bell.* Plaintiff argues that under *Northwestern Bell,* its allegations of a pattern were sufficient to allege a case upon which relief could be granted. We agree,[2] and there is no necessity for any real discussion of the issue because defendants in their supplemental brief concede the point.[3] Defendants seek to avoid the issue, however, by seeking to have us declare RICO unconstitutional. They perceive in the concurring opinion in *Northwestern Bell* an invitation to mount a constitutional challenge with respect to RICO, and they press us to hear and decide the issue now. *See Northwestern Bell,* 109 S.Ct. at 2909 (Scalia, J., concurring in the judgment) ("That the highest Court in the land has been unable to derive from

[RICO] anything more than today's meager guidance bodes ill for the day when [a constitutional] challenge is presented.").

We decline to consider the constitutionality of RICO in this appeal. The question of its validity was not litigated in the district court. More significantly, the issue is raised before us only after argument of the appeal. In our view the case must be returned to the district court on the basis of what it decided. On remand there will be ample opportunity to raise any question about the constitutionality of RICO and to litigate the issue in the normal course of events. *Cf. Newmeyer v. Philatelic Leasing, Ltd.,* 888 F.2d 385, 399 (6 Cir.1989) ("no injustice would result from allowing the issue [of RICO's constitutionality] to be addressed in the first instance by the district court in the context of a properly developed record").

## III.

■ We next consider the district court's ruling that the complaint should be dismissed because "plaintiff has suffered no injury arising from a § 1962(a) violation." In its oral ruling, the district court stated that under § 1962(a), the alleged injury must flow from the defendant's investment or use of the income, and not from the harm suffered by the commission of the predicate racketeering acts.

The question of whether § 1962(a) provides a cause of action under § 1964(c) only for those injured through the investment and use of the racketeering income (the "investment use" rule) has caused a significant split in the courts. Two of our sister circuits and numerous district courts have

---

2. In *Northwestern Bell,* the Court rejected the rigid notion that predicate acts form a pattern only when they are part of separate illegal schemes. 109 S.Ct. at 2899–2901. The Court observed that a pattern could be demonstrated by showing the requisite "continuity" and "relationship," i.e., proving "a series of related predicates extending over a substantial period of time." *Id.* at 2902. We think the nature of the alleged activity, more than a ten-year scheme repeatedly to defraud up to 100 salesmen of earned commissions, satisfied both these requirements.

3. The defendants maintain, however, that the district court's finding of no pattern can be affirmed if we retain the rationale of *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149 (4 Cir.1987). In *Zepkin,* we noted that to demonstrate a pattern, a plaintiff must show activities of a sufficient "criminal dimension and degree" whose "scope and persistence pose a special threat to social well-being." 812 F.2d at 155. That language was used, however, only as a shorthand formulation of the holding in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). It is more a descriptive than a prescriptive formulation.

taken the same view as the district court in this case, concluding that injuries caused by only the alleged racketeering activity are insufficient to support an action under § 1962(a). *See, e.g., Rose v. Bartle,* 871 F.2d 331, 357–58 (3 Cir.1989); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149–50 (10 Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *P.M.F. Services, Inc. v. Grady,* 681 F.Supp. 549, 555 (N.D.Ill.1988); *Leonard v. Shearson Lehman/American Express, Inc.,* 687 F.Supp. 177, 181 (E.D.Pa.1988); *In re Rexplore, Inc. Sec. Litig.,* 685 F.Supp. 1132, 1141 (N.D.Cal.1988); *Omega Constr. Co. v. Altman,* 667 F.Supp. 453, 464 (W.D. Mich.1987); *In re Gas Reclamation, Inc. Sec. Litig.,* 659 F.Supp. 493, 511 (S.D.N.Y. 1987).[4] Conversely, several courts have held that injury caused by the predicate racketeering acts is sufficient to state a § 1962(a) violation. *See, e.g., Avirgan v. Hull,* 691 F.Supp. 1357, 1362 (S.D.Fla. 1988); *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 693 F.Supp. 666, 671 (N.D.Ill.1988), *aff'd on other grounds,* 877 F.2d 1333 (7 Cir.1989); *In re Nat'l Mortgage Equity Corp. Certificates Litig.,* 682 F.Supp. 1073, 1081 (C.D. Cal.), *appeal dismissed on other grounds,* 821 F.2d 1422 (9 Cir.1987); *King v. E.F. Hutton & Co.,* RICO Bus.Disp.Guide (CCH) ¶ 6578, 1987 WL 8733 (D.D.C.1987); *Smith v. MCI Telecommunications Corp.,* 678 F.Supp. 823, 828 (D.Kan.1987); *Snider v. Lone Star Art Trading Co.,* 659 F.Supp. 1249, 1255–56, *opinion upon reconsideration,* 672 F.Supp. 977 (E.D.Mich.1987), *aff'd by unpublished order,* 838 F.2d 1215 (6 Cir.1988); *Louisiana Power & Light Co. v. United Gas Pipe Line Co.,* 642 F.Supp. 781, 805 (E.D.La.1986).

In our view, the relevant statutory language and goals of the RICO statute, along with the treatment accorded §§ 1962 and 1964(c) by the Supreme Court, convince us that the "investment use" rule is flawed, and so we reverse the district court's invocation of it.

In any dispute over the scope of RICO, "we look first to its language. If the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). Several courts that have followed the "investment use" rule have relied upon the statutory language of § 1962(a). *See, e.g., Grider,* 868 F.2d at 1149.

We are not persuaded that the statutory language supports the district court's holding. *Smith,* 678 F.Supp. at 829 (language of § 1962(a) "does not dictate" investment use rule). To recap the statutes, § 1962(a) prohibits any person "who has received any income ... derived from a pattern of racketeering activity ... to use or invest ... any part of such income ... in ... the establishment or operation of, any enterprise...." Section 1964(c), in turn, states that "[a]ny person injured in his business or property *by reason of* a violation of section 1962 may sue therefor ..." (emphasis added). To allege a violation of § 1962(a), a plaintiff must show (a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise. Nothing in the "by reason of" language of § 1964(c), however, limits the compensable racketeering injuries to those sustained by the second prong, i.e., *after* the investment and/or use of the income. To be sure, individuals may be injured by the investment and use of the illegally obtained income. However, this is not the only injury that plaintiffs sustain "by reason of" a § 1962(a) violation. *See Avirgan,* 691 F.Supp. at 1362 (defendant's conduct can injure a RICO plaintiff through the use and investment of the racketeering income *and* by the "*operation* of the enterprise") (emphasis added); Blakey & Cessar, *Equitable Relief Under Civil RICO: Reflections on* Religious Technology Center v. Wollersheim: *Will*

---

4. Some of these courts have viewed the lack of a § 1962(a) injury as one of standing, while others have treated it as one of causation. *See* D. Smith & T. Reed, Civil RICO ¶ 6.04[5][a] (1988).

*Civil RICO Be Effective Only Against White–Collar Crime?*, 62 Notre Dame L. Rev. 526, 586 n. 237 (1987) ("Where 'racketeering activity' produces income and it (or its proceeds) is invested (or used) in an enterprise, injury may be of at least three types...."). Where a corporation is the "person" that commits the racketeering acts and benefits from them, that corporation causes injury to several entities at different stages of the racketeering activity.[5] Specifically, that corporation inflicts injuries on the individual or entity from whom the income was obtained, and on the entity that has suffered a competitive disadvantage from the racketeering activity. Some courts that have followed the "investment use" rule assume, without analysis, that the victims of corporate racketeering acts are not injured *in the process* of the corporation's receipt and use of the illegally obtained income. *See, e.g., P.M.F. Services*, 681 F.Supp. at 555 (victims of mail fraud only injured by use of the proceeds). To the contrary, we think the broadly drafted "by reason of" language in § 1964(c) allows recovery for such injuries, despite the fact that one element of the violation, the use of the proceeds, may not have contributed to or caused the injury. *Cf. Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809 (7 Cir.1987) (plaintiff may recover under § 1964(c) by proving a violation of section 1962 and "an injury directly resulting from *some or all* of the activities comprising the violation") (emphasis added). With all due respect to our sister circuits, we thus decline to read an "investment use" rule into the opaquely drafted § 1964(c).

A second problem with the "investment use" rule is that it conflicts with the explicit policy that RICO be liberally interpreted. *See* Organized Crime Control Act of 1970, Pub.L. 91–452, § 904(a), 84 Stat. 947. This "liberal construction clause" has been cited by the Supreme Court to support broad applications of the RICO statute on three occasions. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 492 n. 10, 105 S.Ct. 3275, 3283 n. 10, 87 L.Ed.2d 346 (1985) ("if Congress' liberal-construction mandate is to be applied anywhere, it is in § 1964, where RICO's remedial purposes are most evident"); *Russello v. United States*, 464 U.S. 16, 27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17, 18 (1983) (using legislative history to support broad use of criminal forfeiture provision); *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981) (same; enterprise requirement). *Cf. Northwestern Bell*, 109 S.Ct. at 2905 (broadly interpreting pattern requirement: "Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways."). When enacted in 1970, Congress explicitly intended for RICO to cover corporations engaged in racketeering activity. *Turkette*, 452 U.S. at 587, 101 S.Ct. at 2530 ("insulating the wholly criminal enterprise from prosecution under RICO is the more incongruous position [given RICO's language and legislative history]"); Goldsmith, *RICO and Enterprise Criminality: A Response to Gerard E. Lynch*, 88 Colum. L.Rev. 774, 786 (1988) (prosecution of legitimate but criminal enterprises was key Congressional concern). If the rule advocated by defendant is followed, however, corporate liability under RICO will be eviscerated. Given that the named "person" and the named "enterprise" must be separate for § 1962(c) purposes, *see* Part IV *infra*, plaintiffs injured by corporate racketeering have only § 1962(a) to turn to for relief. *Haroco, Inc. v. Amer. Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 402

---

**5.** Although in this case the corporate enterprise is alleged to be the perpetrator of the illicit conduct, the corporation is often the "passive" victim of the racketeering activity. In the latter situation, it is the corporation that has sustained the major injury, whereas in the former case, competitors and employees of the corporation have sustained the injuries. "Th[e] formulation of the statute is designed to impose liability upon a corporation which is a perpetrator of illegal activity but not upon an unwitting conduit of its employees' RICO violations." *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7 Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). When the corporation-enterprise "perpetuates illegal conduct, [it] can be sanctioned under § 1962(a), which, unlike subsection (c), contains no language indicating that the enterprise itself cannot be a liable 'person.'" *Id.* at 967.

(7 Cir.1984) (§ 1962(c) "person/enterprise" rule will not shield corporations from RICO liability because of the availability of § 1962(a)), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Invoking the "investment use" rule would close this avenue off, as it is virtually impossible to prove that the invested income caused the alleged injury. *Louisiana Power & Light*, 642 F.Supp. at 806–07 ("Because [the use or investment of funds gotten from racketeering activity] is not traceable, no causal connection between the use or investment of ill gotten cash and an injury to the plaintiff is provable."). We are not unmindful of the many problems that have developed with respect to RICO, but any correction lies with Congress, and not through judicially-imposed statutory limitations. *Sedima*, 473 U.S. at 499, 105 S.Ct. at 3286 ("defect [of RICO's breadth]—if defect it is—is inherent in the statute as written, and its correction must lie with Congress").

A final reason for rejecting the "investment use" rule stems from the Supreme Court's treatment of §§ 1962 and 1964(c) in *Sedima* and a companion case, *American Nat'l Bank & Trust Company of Chicago v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam). In *Sedima*, the defendant argued that § 1962(c) required civil RICO plaintiffs to demonstrate an injury different from those resulting from the predicate acts of racketeering activity. The court of appeals agreed with this contention, holding that the complaint must allege a "RICO-type injury," which was either some sort of distinct "racketeering injury" or a "competitive injury." The Supreme Court reversed, stating

> we perceive no distinct "racketeering injury" requirement. Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm of the predicate acts. A reading of the statute belies any such requirement. Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of

§ 1962." Section 1962 in turn makes it unlawful for "any person"—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. §§ *1962(a)–(c)*. If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, *and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c).* There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement.

473 U.S. at 495, 105 S.Ct. at 3284 (footnote omitted) (emphasis added).

Similarly, in *Haroco*, the Court "consider[ed] the question whether a claim under § 1964(c) requires that the plaintiff have suffered damages by reason of the defendant's violation of § 1962 through the prescribed predicate offenses, or whether injury from those offenses alone is sufficient." 473 U.S. at 608, 105 S.Ct. at 3291. The Court concluded that

> [t]he submission that the injury must flow not from the predicate acts themselves but from the fact that they were performed as part of the conduct of an enterprise suffers from the same defects as the amorphous and unfounded restrictions on the RICO private action we rejected in [*Sedima* ].

*Id.* at 609, 105 S.Ct. at 3292.

From both *Sedima* and *Haroco*, we conclude that a similarly unfounded "investment injury" rule has no place in § 1964(c). Although the complaints in *Sedima* and *Haroco* were filed under § 1962(c), it is clear that the Supreme Court was referring to § 1962 as a whole in both cases, and in fact cited § 1962(a) and the offense it defines in *Sedima*. *See* 473 U.S. at 495, 105 S.Ct. at 3284. Rather than construing § 1962(a) as imposing a direct injury requirement in § 1964(c) actions, we believe that *Sedima* instructs us to employ a traditional causation analysis in determining whether a RICO plaintiff has been injured "by reason of" a section 1962 violation.

*Brandenburg v. Seidel,* 859 F.2d 1179, 1189 (4 Cir.1988) (traditional proximate cause analysis applies to the "by reason of" language of § 1964(c)).[6] *See also Ocean Energy II v. Alexander & Alexander, Inc.,* 868 F.2d 740, 744 (5 Cir.1989) (same); *Bass v. Compagnone,* 838 F.2d 10, 12 (1 Cir.1988) (under *Sedima,* "the inquiry is not whether the plaintiff has alleged a direct or indirect injury, but rather whether he or she has alleged an injury that 'flows from' the predicate acts").

We think the plaintiff has alleged causation. Whether he will be able to prove it at trial is not a question on which we express any view. Rather, we are deciding whether this aspect of the complaint survives a Rule 12(b)(6) motion, and we confine ourselves to the allegations of the complaint.

■ Plaintiff's complaint mirrors the activity prohibited in § 1962(a) and the injuries cognizable under § 1964(c). For example, in Count I, plaintiff, after alleging the false price book and rebate schemes, avers that "[t]hrough the use of the fraudulent schemes ... defendant Crown was able to retain funds which rightfully were payable to the plaintiff Busby and the Class Plaintiffs as commissions based upon the true cost of the goods they sold ... [and] defendant Crown was able to retain those funds and use those funds in its operations described as that term is used in 18 U.S.C. § 1962(a)." As a further allegation, the complaint recites that "plaintiff Busby and the Class Plaintiffs were injured in their business and property by reason of the operation of Crown in the manner described above."

Similarly, in Count II of the complaint, plaintiff alleges that "[t]hrough the collection of receipts through its rebate program ... defendant Hammermill has used and continues to use the proceeds and income derived directly and indirectly from the patterns of racketeering activity by all defendants to maintain its ownership of ... Crown, and to establish and operate the CDA Division, all in violation of 18 U.S.C. § 1962(a)." Immediately following, plaintiff alleges that "plaintiff Busby and the Class Plaintiffs have been injured in their business and property by reason of defendant Hammermill's violation of 18 U.S.C. § 1962 by depriving them of commissions owing to them, as described above."

Whether viewed as a matter of standing or a question of causation, we hold that plaintiff's allegations are sufficient to state a cause of action immune to summary dismissal by a motion under Rule 12(b)(6).

## IV.

We come finally to *Computer Sciences,* the aspect of the appeal that we are considering in banc.

*Computer Sciences* was an early RICO decision. It involved a prosecution for violations of §§ 1962(a), (c) and (d) and other crimes. From the panel's opinion, there is no indication that any party argued that there was any difference between §§ 1962(a) and 1962(c) insofar as the identity of the "person" transgressing the statute, on the one hand, and the "enterprise," on the other hand. Without distinguishing between the two sections of the statute, the panel said

> We conclude that "enterprise" was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish.

689 F.2d at 1190.

■ To the extent that *Computer Sciences* held that the alleged "person" who violates § 1962(c) must be different from the "enterprise," we recognize that this holding has been widely followed throughout the circuits, and we have no occasion now to question its correctness.[7] To the extent that *Computer Sciences* held that there was a like requirement in a proceeding under § 1962(a), however, it has been followed only in this circuit where customarily a panel considers itself bound by the prior decision of another panel, absent an in banc overruling or a superseding con-

---

6. Although the panel in *Brandenburg* did not address the question we answer here, we note that there was a § 1962(a) count in the plaintiff's complaint in *Brandenburg.*

7. *But see United States v. Hartley,* 678 F.2d 961, 987–90 (11 Cir.1982) (the only circuit holding that the person and enterprise need not be dis-

trary decision of the Supreme Court.[8]  In the other circuits that have considered the § 1962(a) aspect of *Computer Sciences*, it has been universally rejected.[9]

The leading case rejecting *Computer Sciences'* view of § 1962(a) is *Haroco v. Amer. Nat'l Bank & Trust Co.*, 747 F.2d 384 (7 Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam).  In analyzing and comparing the language of the two subsections,[10] the Seventh Circuit said:

> As we read subsection (c), the "enterprise" and the "person" must be distinct. However, a corporation-enterprise may be held liable under subsection (a) when the corporation is also a perpetrator.  As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce.  Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern racketeering activity in its operations.  This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering.  This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.

747 F.2d at 401–02 (footnotes omitted).

Upon reconsideration, we view the reasoning of *Haroco* as compelling.  Unlike subsection (c), which requires a *relationship* between the "person" and the "enterprise" (i.e., employer-employee), subsection (a) requires only the *use* of an "enterprise" by a "person."  Thus, we are now persuaded that for a violation of § 1962(a), the offender and the enterprise need not be separate.  They may be identical.  We therefore overrule this aspect of *Computer Sciences* and its progeny.  Whatever may

tinct for § 1962(c) purposes), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

**8.** This court has applied *Computer Sciences* in *Adamson v. Alliance Mortgage Co.*, 861 F.2d 63, 66 (4 Cir.1988) (claim dismissed because no distinction between enterprise and person); *NCNB Nat'l Bank of North Carolina v. Tiller*, 814 F.2d 931, 936 (4 Cir.1987) (person not distinct from enterprise when corporation and wholly-owned subsidiary are involved, despite fact that both are separate legal entities); *Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.*, 819 F.2d 1279, 1287 (4 Cir.1987) (claim dismissed because franchiser was alleged "person" and separately incorporated franchisee was "enterprise").

**9.** In addition to the *Haroco* case discussed in the text *infra*, see *Yellow Bus Lines, Inc. v. Local Union 639*, 839 F.2d 782, 790 (D.C.Cir.1988) ("corrupt organizations which conduct their own affairs by illegal means may often be subject to direct liability under [§ 1962(a) ]"); *Garbade v. Great Divide Mining*, 831 F.2d 212, 213 (10 Cir.1987) (person and enterprise may be identical when enterprise is actually direct beneficiary of pattern of racketeering activity); *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1361 (3 Cir.1987) (corporation-enterprise liable under RICO when beneficiary of racketeering activity); *Schreiber Distributing Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1397 (9 Cir.1986) (adopting *Haroco*); *Schofield v. First Commodity Corp.*, 793 F.2d 28, 31 (1 Cir.1986) (same); *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5 Cir.1986) (same).  However, two district courts have followed *Computer Sciences*.  *Rush v. Oppenheimer & Co.*, 628 F.Supp. 1188, 1197 (S.D.N.Y.), *rev'd on other grounds*, 779 F.2d 885 (2 Cir. 1985); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 653 F.Supp. 908, 916 (D.Minn.1986), *aff'd on other grounds*, 829 F.2d 648 (8 Cir.1987), *rev'd on other grounds*, ─── U.S. ───, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**10.** We have set forth the relevant language of § 1962(a) in the text.  The relevant language of § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

842

be the corporate relationship between Crown and Hammermill and the division through which Hammermill operates Crown, that relationship, standing alone, will not constitute a defense against a violation of § 1962(a).

REVERSED AND REMANDED.

Circuit Judges PHILLIPS and SPROUSE concurred.

Chief Circuit Judge ERVIN and Circuit Judges RUSSELL, WIDENER, HALL, MURNAGHAN, CHAPMAN, WILKINSON and WILKINS joined Part IV of the opinion.