**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

POTOMAC ELECTRIC POWER COMPANY,
*Plaintiff-Appellant,*

v.

ELECTRIC MOTOR AND SUPPLY,
INCORPORATED; RALPH FORCE;
CHARLES M. RHODES,
*Defendants-Appellees,*

and

DARRYL PRICE,
*Defendant.*

No. 00-2542

POTOMAC ELECTRIC POWER COMPANY,
*Plaintiff-Appellee,*

v.

ELECTRIC MOTOR AND SUPPLY,
INCORPORATED; RALPH FORCE;
CHARLES M. RHODES,
*Defendants-Appellants,*

and

DARRYL PRICE,
*Defendant.*

No. 00-2557

Appeals from the United States District Court
for the District of Maryland at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-98-2519-S)

Argued: June 6, 2001

Decided: August 10, 2001

Before WILLIAMS, KING, and GREGORY, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Williams wrote the opinion, in which Judge King and Judge Gregory joined.

---

### COUNSEL

**ARGUED:** James Patrick Gillece, Jr., MCGUIRE WOODS, L.L.P., Baltimore, Maryland, for Appellant. James Patrick Ulwick, KRAMON & GRAHAM, Baltimore, Maryland, for Appellees. **ON BRIEF:** Robert R. Niccolini, MCGUIRE WOODS, L.L.P., Baltimore, Maryland, for Appellant. Bruce L. Marcus, MARCUS & BONSIB, Greenbelt, Maryland, for Appellee Force; Paul F. Kemp, CATTERTON, KEMP & GREENBERG, Rockville, Maryland, for Appellee Electric Motor.

---

### OPINION

WILLIAMS, Circuit Judge:

Potomac Electric Power Co. (PEPCO) appeals the district court's grant of summary judgment to Electric Motor and Supply, Inc., Ralph Force, and Charles Rhodes (collectively EMS) on its claims arising under the private suit provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1962, and EMS cross-appeals from the district court's failure to grant summary judgment in EMS's favor on the alternate ground of lack of proof of fraud and its failure to dismiss the case on the ground of lack of "investment injury." For the reasons that follow, we affirm in part, reverse in part, and remand for additional proceedings.

## I.

### A.

PEPCO is an electric utility company serving the Washington, D.C. metropolitan area. EMS is a privately held corporation whose business is the repair of electric motors; its plant and office is in Altoona, Pennsylvania. Ralph Force is the owner of EMS, and Charles Rhodes is its Chief Engineer. From 1985 until 1996, EMS provided electric motor repair services for PEPCO as a result of EMS's successful bids for PEPCO's work. PEPCO generally sent its motors to EMS for repair only after they failed. With rare exceptions, EMS returned the motors to PEPCO in a repaired and working condition that passed PEPCO's internal inspection process. No evidence in the record indicates that any of the motors repaired by EMS had failed as of September, 1999.

In March of 1994, PEPCO received an anonymous tip suggesting that certain PEPCO employees had engaged in fraudulent bid-rigging in conjunction with EMS employees. As a result, PEPCO commenced an internal investigation that initially focused on bid-rigging but eventually broadened to include the issue of whether EMS had knowingly failed to repair PEPCO's motors pursuant to PEPCO's specifications. In August of 1994, PEPCO's internal investigation concluded that EMS had knowingly failed to perform PEPCO's repairs as specified.

PEPCO principally alleges that its specifications required its motors to be repaired using epoxy through a process called vacuum pressure impregnation (VPI), and that two separate VPI treatments were required. Evidence indicates that by at least 1992, PEPCO had reminded EMS that its bid specifications required this "double VPI" treatment. Richard Beegle, who was plant manager for EMS's facility in Altoona from May of 1991 until October of 1993, stated in an affidavit that after EMS received these specifications, it nonetheless performed only one VPI treatment, and used polyester instead of epoxy in repairing the motors. Beegle further testified that EMS occasionally applied an epoxy coating over the polyester to cover up noncompliance with PEPCO's specifications, sometimes prepared false documentation for PEPCO showing that work had been performed using epoxy and two VPI treatments, and falsified the results of tests

designed to evaluate the attributes of the repaired motor.[1] Tests performed for PEPCO by an outside company showed that at least two motors repaired by EMS were repaired using polyester instead of epoxy and then covered with epoxy in a manner that tended to conceal this fact.

## B.

On July 29, 1998, PEPCO filed suit under RICO, 18 U.S.C.A. § 1962 (West 2000), alleging that EMS engaged in fraudulent activities in the repair of PEPCO electric motors over a period of several years. On January 20, 1999, EMS filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which the district court granted in part and denied in part. The portion of the district court's ruling on the motion to dismiss that is under review here is the district court's denial of EMS's motion to dismiss Count I of PEPCO's complaint on the basis that PEPCO failed to allege that its injury derived from EMS's use of racketeering proceeds. Following discovery, EMS filed two separate motions for summary judgment, one for lack of proof of fraud and the other for lack of proof of damages. The district court granted the motion for summary judgment on the basis of lack of proof of damages and did not reach EMS's contention that summary judgment was also justified by lack of proof of fraud. PEPCO timely appealed from the grant of summary judgment, and EMS cross-appealed from the district court's failure to grant its motion for summary judgment for lack of proof of fraud, as well as from the partial denial of its motion to dismiss.

## II.

A private RICO plaintiff only has standing to bring suit if he can show damage to "business or property" proximately caused by the

---

[1]EMS claims that Beegle has "no admissible testimony." (Appellee's Br. at 12.) This putative evidentiary challenge, however, is in fact simply a reflection of EMS's statute of limitations argument, *see infra* Part III, and because we find the record inadequately developed to resolve the statute of limitations issue, we proceed on the assumption that Beegle's testimony is relevant and admissible.

defendant's RICO violation.[2] *See* 18 U.S.C. § 1964(c) (providing that a plaintiff must show that it was "injured in [its] business or property by reason of a violation"); *Caviness v. Derand Resources Corp.*, 983 F.2d 1295, 1305 (4th Cir. 1993) (stating that a plaintiff must show "damage proximately caused by the violation"). PEPCO argues that it adduced sufficient proof of the fact of injury to survive EMS's motion for summary judgment.

The district court, however, found that PEPCO presented no evidence that the motors repaired by EMS failed more frequently, had a shorter useful life, or were less valuable as a result of EMS's claimed failure to follow repair specifications. PEPCO claimed that the proper measure of damages was the entire repair price, and thus, it was simply entitled to the return of all funds paid to EMS for non-compliant repairs; the district court found this argument unpersuasive. As a result, the district court held that the amount of damages was "speculative and unprovable," precluding RICO liability. (J.A. at 645.)

The district court correctly found that PEPCO adduced no evidence that any motor repaired by EMS had failed or had not performed as well due to EMS's claimed fraud. Further, PEPCO's argument that the proper measure of its damages is the entire price paid for repairs founders because PEPCO must produce evidence of the actual value of the services that were rendered. *See*, *e.g.*, *Western Contracting*

---

[2]In this Circuit, a plaintiff need not show that the damages flowed from the use or investment of the racketeering income, only that damages flowed from racketeering activity itself. *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 837 (4th Cir. 1990). Every other circuit to address the issue has adopted an "investment use injury" requirement, holding that a plaintiff's damages must be caused by the defendant's use of the proceeds of racketeering. *See*, *e.g.*, *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1230 (D.C. Cir. 1991) (rejecting the *Busby* rule). Recognizing that the panel is bound by *Busby*, EMS nonetheless seeks to preserve the "investment use" issue for *en banc* review. As this panel must follow *Busby*, EMS's request to overrule that decision must be raised to the *en banc* court and need not detain us longer. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (stating that a panel cannot overrule a decision of a prior panel).

*Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1203-04 (4th Cir. 1989) (stating that even using Maryland's "out-of-pocket" method for determining damages, plaintiff must produce evidence of the actual value of the services rendered). Granting PEPCO a refund of the entire amount paid for repairs would obviously confer on PEPCO a large windfall, because even if the motors were not repaired in conformity with each specification, it is undisputed that most of the work that PEPCO paid for was performed by EMS and that the motors were returned in repaired, working order.

PEPCO nevertheless argues that it need not show that the motors' performance was diminished or that the motors were less valuable as a result of EMS's failure to perform repairs as specified. We agree. If a party specifically bargains for a service, is told that the service has been performed, is charged for the service, and does not in fact receive the service, it is not appropriate for courts to inquire into whether the service "really" had value as a precondition to finding that injury to business or property has occurred. *See Hellenic Lines, Ltd. v. O'Hearn*, 523 F. Supp. 244, 248 (S.D.N.Y. 1981) (stating that RICO injury is proved where a company demonstrated that "padded" bills resulted in payment for services not rendered). If the evidence indicates that a party paid value for a good or service, this fact is a more reliable indicator that the service actually had value to the party than the post hoc intuition of a court as to the good or service's value. John Morykon, EMS's own witness, testified that PEPCO probably was charged more for the repairs because the specifications were higher than industry standards. Even if PEPCO's asserted idiosyncratic specifications — requiring "double VPI treatments," etc. — did absolutely nothing to improve the reliability of its motors, these specifications represented a service for which PEPCO bargained, paid, and allegedly did not receive despite EMS's representations to the contrary. PEPCO's analogy is apt: If a consumer bargains for and pays extra for an automotive transmission repair to be performed using original manufacturer parts, an auto repair shop commits fraud if it performs the repair using generic parts and tells the consumer that original manufacturer parts were used, regardless of whether the generic parts are actually less useful or reliable.

Our conclusion is buttressed by the language of § 1964(c), which confers RICO standing on "any person injured in his business or prop-

erty," not any person who can quantify the amount of the injury. The best reading of § 1964(c)'s injury to business or property requirement is that it refers to the fact of injury and not the amount. If PEPCO can establish that EMS represented that it was complying with specifications and intentionally did not do so while charging a contract price that reflected the specifications, PEPCO has been "injured in its property" to the extent of the difference between the amount it paid and the amount it would have paid under specifications reflecting the actual work performed. Even if the precise amount of its injury is not susceptible of ready proof, it is clear that a reasonable finder of fact could infer that some injury has occurred; that is, the finder of fact could infer from the fact that the parties bargained for expensive additional procedures that the cost of those procedures influenced the contract price.

The district court followed Ninth Circuit precedent holding that *quantifiable* RICO damages are an essential prerequisite to core RICO liability. *See Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992). However, the district court's statement of its holding is inconsistent with the Ninth Circuit's approach. *See* J.A. at 642 ("the plaintiff . . . must show that he has suffered *some* compensable damage." (emphasis added)). Similarly, this Circuit has not held that quantifiable damages are a necessary precondition to RICO liability; instead, this Circuit has formulated the requirement in terms of the necessity of proving *some* damages, not a specific amount. *Caviness*, 983 F.2d at 1305 (requiring a showing of "damage proximately caused by the violation"). PEPCO argues that at a minimum, it has demonstrated some damage and argues that in the absence of proof of a specific amount, it is entitled to nominal damages, which would trigger an award of attorney's fees. Indeed, under analogous provisions of the Clayton Act, the Second Circuit has upheld just such an award of nominal damages and attorney's fees. *United States Football League v. National Football League*, 887 F.2d 408, 411 (2d Cir. 1989). *Cf. McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640-41 (4th Cir. 1998) (suggesting that nominal damages may be appropriate under the Family and Medical Leave Act, but noting that a reduction in the award of attorney's fees may be warranted when only nominal damages are proven); *Rosario v. Livaditis*, 963 F.2d 1013, 1021 (7th Cir. 1992) (remanding for a new trial on damages because in a RICO case, the jury found liability but "did not award even nominal dam-

ages on the RICO counts"). EMS, in its reply brief, provides no case law or argument as to why nominal damages is not a viable concept under civil RICO. Thus, we conclude that the district court erred in granting summary judgment on the basis of inability to prove the amount of damages; if the motors were not repaired according to specifications *some* amount of damage likely is present, even if PEPCO cannot prove the amount, and a nominal amount of damage is adequate to support liability.

## III.

EMS argues as an alternative ground for affirmance that PEPCO failed to create a triable issue of fact as to whether EMS fraudulently repaired PEPCO's motors on more than one occasion; the district court did not reach this issue, granting summary judgment instead on the ground of lack of proof of injury. Private RICO suits are governed by a four-year statute of limitations, which runs from the date when the plaintiff discovered, or should have discovered, the injury. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997); *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (discovery of injury, not of other elements of the claim, starts the statute of limitations clock). As EMS notes, PEPCO may not "bootstrap" time-barred claims by linking them to later, non-time-barred claims. *Klehr*, 521 U.S. at 190. Here, EMS asserts that PEPCO was on notice of the potential violations by at least March of 1994, while PEPCO claims it did not have, and should not have had, knowledge until August of 1994. Since PEPCO filed its complaint on July 29, 1998, the application of the statute of limitations essentially turns on the question of whether, with respect to each alleged injury, PEPCO knew or should have known of its injury prior to July 29, 1994. Because the evidence is in conflict relative to when PEPCO discovered or should have discovered EMS's alleged fraudulent repair practices, because resolving these conflicts will involve a fact-intensive determination, and because the district court has not grappled with the detailed factual evidence regarding when PEPCO knew or should have known about each separate alleged incident, we believe it would be unwise to resolve this issue for the first time on appeal; instead, the district court should resolve it on remand.

Assuming that predicate acts occurring before July 1994 are not time-barred, the testimony of EMS employee Richard Beegle clearly

creates a disputed issue of material fact as to fraud;[3] Beegle states that from May 1991 to October 1993, when he was an EMS employee, he witnessed a host of knowing failures to repair motors in accordance with specifications and observed EMS staff filling out fraudulent paperwork stating to PEPCO that work had been performed when it had not been. Further, EMS's time entry reports often state that only one VPI treatment was performed on a given motor when other documentation reflects that two treatments were performed. EMS argues that these time entry reports were prepared for internal purposes and are not accurate; but this is an issue for the trier of fact. If PEPCO's statute of limitations argument is correct on the facts in this case, which have not been fully developed relative to this issue, there is adequate proof of more than one instance of fraud to survive summary judgment.

IV.

PEPCO further argues that it may obtain recission and other equitable remedies under civil RICO. As a threshold matter, while PEPCO argues on appeal that it is entitled to equitable recission, restitution, and constructive trust, before the district court, PEPCO argued only for recission and not for restitution or constructive trust. We decline to consider PEPCO's restitution and constructive trust arguments, as these arguments were not raised below. *Bregman, Berbert & Schwartz, L.L.C. v. United States*, 145 F.3d 664, 670 n.8 (4th Cir. 1998).

Recission ordinarily involves a judicial termination of a party's contract obligations; it is a court-ordered "unwinding" of a contract, with the goal of returning the parties to the status quo prior to contracting. *Lazorcak v. Feuerstein*, 273 Md. 69, 75 (1974). Given that the contract at issue is a contract for services, recission in the declaratory or injunctive sense is simply not feasible; a court cannot order PEPCO's motors "un-repaired," which would be necessary in order fully to undo the contract.[4] *See Leaf Co. v. Montgomery County*, 70

---

[3]In fact, at oral argument, counsel for EMS conceded that summary judgment on the ground of lack of proof of fraud would be inappropriate if EMS's statute of limitations argument were found to be meritless.

[4]Given the infeasibility of declaratory or injunctive relief in this case, we have no occasion to consider the parties' arguments as to whether

Md. App. 170, 180 (1987) ("The contract is one for services already performed, which is not susceptible of recission."). PEPCO also requests a recission "measure of damages" in which PEPCO simply receives money damages equal to the amount which it paid minus the fair value of services performed. This approach is, in essence, a request for a compensatory money damages award, and it is subject to the same infirmity that plagues PEPCO's entire case, namely PEPCO's inability to quantify the value of the services that EMS allegedly did not perform. *See Volckmann v. Edwards*, 642 F. Supp. 109, 115 (N.D. Cal. 1986) (recission available in private RICO where "it amount[s] to out-of-pocket losses — damages, in essence"); *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1204 (4th Cir. 1989) (stating that under Maryland's essentially recissionary "out of pocket" method for determining damages, the plaintiff must produce evidence of the actual value of the services rendered).[5]

V.

Because PEPCO adduced sufficient proof of the fact of injury to its business or property to survive summary judgment, we reverse the district court's grant of summary judgment to EMS on the basis of lack of proof of damages. We remand to the district court to consider EMS's motion for summary judgment based on lack of proof of fraud. Because we are bound by circuit precedent, we are constrained not to

---

equitable relief is available in a private civil RICO action, and reserve for another day the question of whether relief which goes beyond a purely compensatory measure of money damages is available in private civil RICO actions. *Compare Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986) (concluding that injunctive relief is not available in private civil RICO actions), *with Chambers Dev. Co. v. Browning-Ferris Indus.*, 590 F. Supp. 1528, 1540-41 (W.D. Pa. 1984) (holding that injunctive relief is available in private civil RICO actions).

[5]PEPCO suggested at oral argument that when the recissionary measure of money damages is used, the burden shifts to EMS to prove the fair market value of the services rendered. PEPCO provides no authority for this assertion, and we believe that *Western Contracting Corp. v. Bechtel Corp*, 885 F.2d 1196, 1204 (4th Cir. 1989), provides a contrary rule for fraud cases.

take up EMS's request that we hold that "investment use injury" is an essential prerequisite of a civil RICO action. Finally, we hold that PEPCO is not entitled to recission.

*AFFIRMED IN PART, REVERSED*

*IN PART, AND REMANDED*