**UNITED STATES of America**

v.

**CRYSOPT CORPORATION.**

**Crim. No. B–89–0466.**

United States District Court,
D. Maryland.

Aug. 28, 1991.

Breckinridge L. Willcox, U.S. Atty., and Barbara S. Sale, Asst. U.S. Atty., Joyce K. McDonald, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

John R. Fornaciari, William R. Martin, Robert M. Disch Washington, D.C., for defendant.

WALTER E. BLACK, Jr., Chief Judge.

This is a criminal case arising out of the failure of the Maryland-chartered Community Saving & Loan Association. Defendants Tom J. Billman, Clayton C. McCuistion, Barbara A. McKinney and Crysopt Corporation ("Crysopt") were originally named in a 20–count indictment returned on December 1, 1989, which included charges of conspiracy to commit wire and mail fraud (Count 1), substantive wire and mail fraud (Counts 2–19), as well as criminal violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. (Count 20).[1] On February 28, 1991, the grand jury returned a superseding indictment also containing 20 counts, each against the same defendants named in the corresponding count of the original indictment. Presently pending before the Court are two motions filed by Crysopt seeking dismissal of the original and superseding indictments.[2] This opinion addresses Crysopt's motions only insofar as they relate to the RICO charge in Count 20 of both indictments.[3]

While the government has not formally dismissed the original indictment, it has indicated to the Court its intention to go to trial only on the superseding indictment. The first issues which the Court must address concern whether the RICO charge in the superseding indictment, returned on February 28, 1991, is barred by the statute of limitations.[4] The RICO statute does not contain its own statute of limitations. Criminal RICO prosecutions, therefore, are governed by the general five-year federal statute of limitations contained in 18 U.S.C. § 3282. *United States v. Vogt,* 910 F.2d 1184, 1195 (4th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991).

Crysopt is charged in Count 20 with violation 18 U.S.C. § 1962(c), which makes it a crime for a person to conduct the affairs of an "enterprise" through a "pattern of racketeering activity". 18 U.S.C. § 1962(c).[5] Numerous courts have held that, in order to avoid the bar of limitations in a § 1962(c) prosecution, the government must allege that the defendant committed a predicate act of racketeering activity within five years of the return of the indictment. *United States v. Torres Lopez,* 851 F.2d 520, 525 (1st Cir.1988), *cert. denied,* 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989); *United States v. Persico,* 832 F.2d 705, 714 (2nd Cir.1987), *cert. denied sub nom. Russo v. United States,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988); *United States v. Bethea,* 672 F.2d

---

1. Crysopt was named as a defendant only in the conspiracy charge in Count 1, the substantive wire fraud charges in Counts 6 and 7, and the RICO charge in Count 20. McKinney and McCuistion were named as defendants in the conspiracy charge in Count 1, and the substantive wire and mail fraud charges in Counts 2–7 and 11–17. Billman, named in all 20 counts, remains a fugitive at large and appears to have fled the United States.

2. With regard to the original indictment, Crysopt filed a Motion to Dismiss Counts One, Three, Six, Seven, Eight, Nine, Ten, Eighteen, Nineteen and Twenty of the Indictment. After the return of the superseding indictment, the Court invited the parties to file supplemental memoranda and/or motions. Crysopt then

filed a Motion (i) To Dismiss the Superseding Indictment in its Entirety as Barred by the Statute of Limitations; and (ii) To Dismiss Counts One, Three, Five, Six, Seven, Eight, Nine, Ten, Eighteen, Nineteen and Twenty for Failure to Charge an Offense.

3. The Court addresses all non-RICO issues raised by Crysopt's motions, as well as related motions filed by McKinney and McCuistion, in a separate Memorandum Opinion.

4. There is no dispute that the original indictment was timely.

5. For a more extensive discussion of 18 U.S.C. § 1962(c), *see infra,* at 11.

407, 419 (5th Cir.1982). In *United States v. Vogt,* the Fourth Circuit explained the reasoning behind these holdings as follows:

> Simply put, the gravamen of the offense defined in subsection (c) is conduct which by definition is necessarily exactly coincident in time with the continuation of a pattern of racketeering activity. For the specific conduct proscribed is that of conducting an enterprise *through* a pattern of racketeering activity. Once that pattern of activity is ended, the offense under subsection (c) is complete. The enterprise may continue on, but it is no longer being conducted *through* a pattern of racketeering activity. The triggering event under subsection (c) may therefore rightly be identified as the last predicate act making up the pattern of racketeering activity because that also marks the consummation of the conduct proscribed.

910 F.2d at 1196 (emphasis in original).[6]

In the instant case, the most recent predicate act alleged against Crysopt in the superseding indictment is a wire transfer on November 26, 1985. Because the superseding indictment was returned well over five years later, on February 28, 1991, the RICO charge in Count 20 is time-barred unless the original indictment tolled the statute of limitations.[7]

■ Preliminarily, the Court has considered the savings clause contained in 18 U.S.C. § 3288, which provides in pertinent part:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information. . . .

18 U.S.C. § 3288. However, § 3288, by its own terms, only applies where an indictment has previously been dismissed. In this case, the original indictment was still very much pending when the government obtained the superseding indictment. Accordingly, § 3288 cannot render the new indictment timely. *See United States v. Friedman,* 649 F.2d 199, 203 (3rd Cir.1981); *United States v. Gillespie,* 666 F.Supp. 1137, 1140 (N.D.Ill.1987).

■ A doctrine more applicable to this case provides that, "[a] superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges." *United States v. Italiano,* 894 F.2d 1280, 1282 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990); *see Friedman,* 649 F.2d at 203–04; *United States v. Grady,* 544 F.2d 598, 601–02 (2d Cir.1976). Crysopt argues, and the Court agrees, that this rule only applies if the original indictment is 'validly pending" when the superseding indictment is returned. *Friedman,* 649 F.2d at 204; *Gillespie,* 666 F.Supp. at 1140 (expressly holding that an *invalid* indictment does not toll limitations); *see also Italiano,* 894 F.2d at 1282 n. 2 (noting that the term "superseding indictment" usually refers to an indictment that is returned while a *valid* indictment is still pending).

■ The government argues that a timely indictment will toll limitations even if it is defective and fails to charge a crime. The Court disagrees. The Fourth Circuit has expressly held that a defective indictment confers no jurisdiction whatsoever upon the trial court. *United States v. Hooker,* 841 F.2d 1225, 1231–32 (4th Cir. 1988) (en banc); *United States v. Pupo,* 841 F.2d 1235, 1239 (4th Cir.1988) (en banc). Accordingly, a defective original indictment

---

**6.** The *Vogt* court, faced with the question of when the limitations period begins to run for offenses under 18 U.S.C. § 1962(a), discussed the § 1962(c) holdings of other circuits by way of comparison.

**7.** The Court notes that the government has not opposed Crysopt's argument that the superseding indictment was returned more than five years after the limitations period began to run on the RICO charge in Count 20.

is simply a nullity. An *invalid* indictment which fails even to invoke the Court's jurisdiction clearly cannot serve to block the door of limitations as it swings closed. *See United States v. Peloquin,* 810 F.2d 911, 913 (9th Cir.1987) (holding that the mere filing of an indictment does not, by itself, toll the running of the statute of limitations under 18 U.S.C. § 3282).[8]

■ The government cites *United States v. Friedman,* 649 F.2d 199 (3rd Cir.1981), in support of its position that an invalid indictment tolls limitations. In *Friedman,* the original indictment contained, *inter alia,* five separate counts for interstate transport of stolen, converted or fraudulently converted checks, in violation of 18 U.S.C. § 2314. *Id.* at 201. However, four of the counts failed to meet the jurisdictional amount of $5,000. *Id.* at 202. The untimely superseding indictment, which combined the five original counts into one charge for the same offense, was returned after the defendant had filed a motion to dismiss, but before the trial court had ruled. *Id.* at 203. The *Friedman* court does not directly address the effect upon the superseding indictment of the defects in four of the original counts which were subsequently combined in the single valid superseding charge. However, the end result in *Friedman* is reasonable in that the original and superseding indictments both contained a single valid charge for interstate transport of stolen, converted or fraudulently converted checks. This is entirely distinct from a case in which the government argues that a single defective charge may toll the running of limitations in order to save an untimely superseding charge for the same offense. A holding in

the government's favor in such a case would directly conflict with the general rule that only a *validly* pending original charge will save an untimely superseding indictment.[9] The Court will apply that general rule in this case.

Because the defendants have challenged the sufficiency of the RICO charges in both the original and the superseding indictments, the foregoing principles dictate the following line of inquiry. First, the RICO charge in the superseding indictment will be time-barred unless: 1) the corresponding charge in the original indictment was itself valid; and 2) the superseding RICO charge does not "broaden or substantially amend" the original charge. If both of these requirements are met, then the Court must examine the RICO charge in the superseding indictment and determine whether it is sufficient as a matter of law to state an offense.

The following factual background is essential to an understanding of the allegations underlying the original RICO charge itself, as well as Crysopt's position that, even if proven at trial, these allegations would fail to support a conviction for the offense charged. During the period surrounding the events with which the indictment is concerned, defendants Billman and McCuistion owned and controlled Equity Programs Investment Corporation ("EPIC"), as well as numerous related companies. EPIC's business purpose was the formation of real estate limited partnerships, in which EPIC served as the general partner. Limited partnership interests were then sold to outside investors. The EPIC partnerships purchased improved

---

8. In *Peloquin,* a second indictment was returned out of time after the original timely indictment had been dismissed for violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. The court first ruled that the previous, more restrictive version of 18 U.S.C. § 3288 was inapplicable to dismissal of a valid indictment because of a speedy trial violation. It then affirmed the trial court's dismissal of new indictments filed outside the limitations period. 810 F.2d at 913. *Peloquin* does not appear to affect the rule that a valid *pending* indictment will save an otherwise untimely superseding indictment returned for substantially the same offense.

9. To the extent that *Friedman* might be viewed as supporting the government's position on this issue, it conflicts with *Peloquin,* as well as the Fourth Circuit's *Pupo* and *Hooker* decisions discussed in the text. *Friedman,* therefore, is not controlling in any event. Moreover, the Court notes that the district court in *United States v. Gillespie,* 666 F.Supp. 1137 (N.D.Ill.1987), interpreted *Friedman* as supporting its holding that an invalid indictment does *not* toll the statute of limitations. *Id.* at 1141.

parcels of real estate ("the EPIC homes"), rented them for four to five years, and then sold them. During different time periods, the EPIC partnerships were either intended to generate income for the limited partners, through rentals and upon the sale of the EPIC homes, or to generate losses and tax deductions for the purpose of sheltering limited partners' other sources of income. The companies related to EPIC, either as subsidiary or sister corporations, included EPIC Mortgage, which arranged and serviced mortgages on the EPIC homes, EPIC Securities,[10] which marketed interests in the EPIC limited partnerships to outside investors, and EPIC Residential, which sold EPIC homes upon the termination of each limited partnership.

The original indictment further alleges that, in 1982, Billman and McCuistion caused Equity Acquisitions, Inc. ("Equity Acquisitions") to purchase a majority of the common stock of Community Savings & Loan Association ("Community"). Equity Acquisitions, was wholly owned by Crysopt, Inc., a Delaware corporation owned 80% by Billman and 20% by McCuistion. Crysopt, Inc. was renamed EPIC Holdings Ltd. ("EPIC Holdings") in June 1983.[11] In March 1983, Billman and McCuistion allegedly combined Community and the EPIC companies. By March 1984, after some additional transactions, EPIC Holdings owned Equity Acquisitions which owned Community. Community, in turn, owned an intermediate holding company, Community Financial Services, Inc. ("Community Financial"), which owned EPIC, EPIC Mortgage, EPIC Securities and EPIC Residential as sister companies. In December of that year, an additional holding company, Epicenter Consolidated Ltd. ("Epicenter") purchased all the stock of EPIC Holdings, thus becoming Community's ultimate parent company. In February 1985, the original indictment alleges that the three individual defendants caused Epicenter to donate cash, as well as certain subsidiary corporations, in a reorganization which included the formation of defendant Crysopt. This transaction allegedly involved a transfer of some $14,000,000 from Epicenter to Crysopt.

At various times material to the indictment, Billman was a principal shareholder and chairman of the board of directors of the various holding companies that owned Community, as well as chairman of Community's board of directors. Billman was also sole shareholder, president and chairman of the board of directors of defendant Crysopt. McKinney served as legal counsel to, vice-president of, and a director of the various holding companies which owned Community, and as a member of the executive committee of Community's board of directors. McKinney was also an officer and director of Crysopt. At various times, McCuistion served as director, president and chairman of Community, as well as shareholder and director of various EPIC and Community-related holding companies.

With this background, the original indictment charges that Billman, McCuistion and McKinney used their control over Community to systematically and fraudulently divert over $106,000,000 in funds belonging to Community's depositors. The alleged purpose of these massive diversions was to enrich the defendants themselves, and to support the numerous corporations and partnerships related to EPIC. The original indictment further charges that the diversions began in April 1984, and were accomplished by numerous means, including but not limited to the following: 1) large unsecured advances of debt from Community to EPIC; 2) transactions in which Community paid EPIC large amounts of cash in exchange for unsecured accounts receivable, without regard to the collectibility of the accounts receivable; 3) creation at Maryland National Bank of special "sweep ac-

10. The Court notes that the name "EPIC Securities" in the original indictment was changed to "ESI Securities" in the superseding indictment.

11. The Crysopt name was apparently resurrected in 1985 when Billman caused the creation of Crysopt Corporation, a free-standing company independent of the EPIC and Community-related companies. It is this latter Crysopt which is charged as a co-defendant in the instant case. Hereinafter, all references to "Crysopt" refer to Crysopt Corporation.

counts" for EPIC and related companies, which defendants caused to be funded by monies belonging to Community depositors in the event that EPIC or related companies overdrew on the accounts; 4) execution of large promissory notes by EPIC partnerships to Community to hide the extent of Community's unsecured advances to EPIC; and 5) payment by Community and various EPIC companies, which were Community's subsidiaries, of over $31,000,000 to their parent company, EPIC Holdings, for the fraudulently stated purpose of collecting funds for payment of taxes owed to the Internal Revenue Service.

Once funds were diverted by various means from Community to EPIC and its related companies and partnerships, the original indictment alleges that defendants, as part of the overall scheme to defraud, concealed the fraudulent diversions of funds by causing numerous transfers within the EPIC Holdings chain of companies. In addition, the original indictment charges that defendants caused the creation of Crysopt in 1985 for the purpose of moving the diverted funds away from EPIC and the Community-related tree of companies. Finally, defendants are charged with causing much of the allegedly ill-gotten gains to be transferred to overseas bank accounts in order to place them beyond the reach of various state and federal authorities in this country.

Count 20 charges Crysopt and Billman with violation of 18 U.S.C. § 1962(c), which provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

18 U.S.C. § 1962(c). Crysopt has asserted numerous arguments in support of its position that Count 20 of the original indictment fails to allege facts sufficient to support a conviction under § 1962(c). The Court will address each argument in turn.

Under § 1962(c), criminal liability exists if a "person" conducts or participates in the affairs of an "enterprise" through a pattern of racketeering activity.[12] The Fourth Circuit has specifically held that the defendant and the "enterprise" cannot be one and the same. " '[E]nterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish." *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), *overruled only insofar as requirement relates to 18 U.S.C. § 1962(a), Busby v. Crown Supply, Inc.*, 896 F.2d 833, 841 (4th Cir.1990). In *Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.*, 819 F.2d 1279 (4th Cir.1987)[13], the Fourth Circuit affirmed the dismissal of a RICO claim which charged that the allegedly liable "person," Entre Computer Centers, Inc. ("Entre"), was also part of an "association in fact" enterprise consisting of Entre and its separately incorporated franchises:

> Assuming a corporation can be part of an "association in fact," the central question is whether it can combine with other entities to form an enterprise, when it is already the "person" whose behavior the act is designed to punish. *Computer Sciences* answers that question in the negative.

819 F.2d at 1287.[14]

▪ The original indictment in this case, which charges Crysopt as a liable "person"

---

**12.** The RICO statute defines an "enterprise" as including "[a]ny individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity". 18 U.S.C. § 1961(4).

**13.** This case was also overruled as it relates to the enterprise requirement in 18 U.S.C. § 1962(a).

**14.** The Court recognizes that there is a split among the circuits on the question of whether a corporation may be both a defendant and a member of an "association in fact" enterprise

under § 1962(c), also alleges that the RICO enterprise consisted of an association in fact between Billman, Crysopt, Crysopt's subsidiaries, Epicenter, EPIC Holdings, Equity Acquisitions, Community and its EPIC subsidiaries, and two additional corporations, Prune, Inc. and Plum, Inc. Under the controlling Fourth Circuit precedent discussed above, the original indictment's RICO charge against Crysopt is thus fatally flawed.[15]

■ Even if Crysopt were not directly named as part of the enterprise in this case, the RICO charge in Count 20 of the original indictment would be invalid because Crysopt is not sufficiently distinct from the alleged enterprise itself. Fourth Circuit precedent is clear that RICO defendants must be legally distinct from the enterprise through which they allegedly conduct racketeering activities. For example, in *NCNB National Bank v. Tiller*, 814 F.2d 931 (4th Cir.1987)[16], the Fourth Circuit affirmed the dismissal of a § 1962(c) RICO claim which alleged that a subsidiary was the liable "person" and that its parent corporation was the enterprise, stating that "a 'person' is not distinct from an 'enterprise' when a corporation and its wholly-owned subsidiary are involved." *Id.* at 936; *see also Data Controls North, Inc. v. Financial Corp. of America, Inc.*, 688 F.Supp. 1047, 1052 (D.Md.1988), *aff'd*, 875 F.2d 314 (4th Cir.1989) (table) (dismissing RICO claim where officers and directors of a corporation were allegedly liable "per-

sons" and the corporation itself was the "enterprise").

In *In re EPIC Mortgage Ins. Litig.*, 701 F.Supp. 1192 (E.D.Va 1988), *aff'd in part and rev'd in part on different grounds sub nom. Foremost Guaranty Corp. v. Meritor Sav. Bank*, 910 F.2d 118 (4th Cir. 1990), a case involving many of the same entities named in the instant indictment, the court dismissed a civil RICO claim alleging that Community was the liable "person" and that the "enterprise" consisted of the EPIC limited partnerships, in which Community's indirect subsidiary, EPIC, was the general partner:

> EPIC and EMI were direct subsidiaries of a company called Community Financial Services, Inc. ("CFSI"), which was a wholly-owned subsidiary of Community. EPIC, was in turn the sole general and managing partner of each limited partnership. This connection between Community and the limited partnerships, therefore, negates the distinction between the "person" and the "enterprise" necessary to support a RICO claim.

*Id.* at 1252. In the instant case, the original indictment makes clear that Crysopt and the other entities comprising the alleged enterprise were all owned and/or controlled by defendant Billman. In addition, Crysopt's wholly-owned subsidiaries are part of the enterprise through which Crysopt itself allegedly conducted racketeering activity. As such, Billman and Crysopt, the allegedly liable "persons", are not sufficiently distinct from the entities mak-

under 18 U.S.C. § 1962(c). *Compare Entre Computer Centers, Inc.*, 819 F.2d at 1287 (discussed in text) *with Cullen v. Margiotta*, 811 F.2d 698, 729–730 (2d Cir.) *cert. denied sub nom. Nassau County Republican Comm. v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) (holding that an entity may be both the liable "person" and part of the RICO "enterprise" where the enterprise consisted of more than the entity itself); *United States v. Hartley*, 678 F.2d 961, 988 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) ("A corporation may be simultaneously both a defendant and the enterprise under RICO."). However, until the question is conclusively resolved by the Supreme Court, this Court is, of course, bound to follow the direction of its own Court of Appeals for the Fourth Circuit. Even the U.S. Department of Justice manual issued to

federal prosecutors regarding RICO claims recognizes that, in the Fourth Circuit, an entity may not be named both as defendant and as part of the alleged enterprise. *See Racketeer Influenced and Corrupt Organizations (RICO): A Manual for Federal Prosecutors*, at 46–47 (2d Ed.1988).

**15.** Indeed, the government clearly sought return of the superseding indictment, at least in part, in an attempt to cure this defect, which was amply explored on October 26, 1990 at oral argument on Crysopt's first motion to dismiss.

**16.** This case was overruled by *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 841 (4th Cir.1990) as it relates to the enterprise requirement in 18 U.S.C. § 1962(a).

ing up the association in fact enterprise to sustain a conviction under § 1962(c).

■ Crysopt also argues, and the Court agrees, that the original indictment fails sufficiently to charge it with conducting "a pattern of racketeering activity." Each subsection of the RICO statute requires a showing that defendants engaged in a "pattern of racketeering activity." *Brandenburg v. Seidel,* 859 F.2d 1179, 1184 (4th Cir.1988). Under § 1961(5) of the RICO statute, a " 'pattern of racketeering' activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).[17] In the seminal case of *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court stated that "while two acts are necessary, they may not be sufficient." *Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14. In *Sedima,* and most recently in *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Court held that the predicate acts must both be "related" and indicate an element of "continuity". *See H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900; *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Crysopt does not assert that the acts of racketeering activity alleged in the indictment were not "related". Rather, Crysopt argues that the allegations in the indictment fail to satisfy the "continuity" requirement delineated by the Supreme Court. In *H.J. Inc.,* the Supreme Court attempted to clarify exactly what the continuity element embodies:

"Continuity" is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of relat-

ed predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

492 U.S. at 241–242, 109 S.Ct. at 2901–02 (emphasis in original; citations omitted). The Fourth Circuit has noted that the *H.J. Inc.* Court "endorsed a commonsensical, fact-specific approach to the pattern requirement." *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir.1989). Moreover, in *H.J. Inc.* the Supreme Court expressly rejected the Eighth Circuit's position that RICO plaintiffs must allege that the defendant "had engaged in similar endeavors in the past or that [it was] engaged in other criminal activities," as well as the Circuit Court's holding that "[a] single fraudulent scheme is insufficient." 492 U.S. at 240, 109 S.Ct. at 2901 (quoting *H.J. Inc.,* 829 F.2d 648, 650 (8th Cir.1987)). Rather, the Supreme Court held that, "although proof that a RICO defendant has been involved in multiple criminal schemes would certainly be highly relevant to the inquiry into the continuity of the defendant's racketeering activity, it is implausible to suppose that Congress thought continuity might be shown *only* by proof of multiple schemes." 492 U.S. at 240, 109 S.Ct. at 2901.

The indictment in this case charges Crysopt with having undertaken, at most, six "racketeering acts." Paragraph 4(D) of Count 20, labelled "Racketeering Act Number 4," incorporates by reference the wire fraud charges contained in Counts 6 and 7. Paragraph 4(E), labelled "Racketeering Act Number 5," incorporates by reference "overt acts" numbered 19, 21, 22 and 23 in Count 1. In its memorandum supporting the pending motion, Crysopt makes three arguments in an attempt to eliminate five

---

17. The Court notes that the definition of "racketeering activity" contained in the RICO statute includes violations of both 18 U.S.C. § 1341

(relating to mail fraud), and violations of 18 U.S.C. § 1343 (relating to wire fraud). *See* 18 U.S.C. § 1961(1).

of these six possible predicate racketeering acts from consideration as part of a racketeering "pattern" in this case. First, Crysopt argues that the Court may not consider the Count 1 overt acts numbered 22 and 23 because only defendant Billman is named therein. Second, Crysopt argues that the Court may not consider Counts 6 and 7 because the paragraph in Count 20 incorporating these counts by reference appears on its face only to incorporate them with respect to the RICO charge against defendant Billman. Finally, Crysopt argues that, because Community was placed in conservatorship on September 5, 1985, with the Maryland Deposit Insurance Fund ("MDIF") appointed as conservator, the enterprise as named in the indictment necessarily terminated on that date. As a result, Crysopt asserts that overt act 21, which occurred on or about September 16, 1986, cannot possibly have constituted a racketeering act conducted through the enterprise.[18] Were the Court to adopt all of Crysopt's arguments in this regard, only one alleged racketeering act would remain, thus eliminating the possibility that a racketeering pattern could be established with regard to Crysopt. *See United States v. Mandel*, 862 F.2d 1067, 1074 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989).

The government argues that all four Count 1 overt acts, as well as Counts 6 and 7, may be considered in determining the viability of the original RICO charge against Crysopt. However, assuming *arguendo* that all six acts cited by the government constitute predicate offenses properly considered against Crysopt, the Court finds that they fail, as a matter of law, to satisfy the continuity element required to establish a pattern of racketeering activity in this case.

The original indictment plainly states, and the government concedes, that the overall conspiracy to defraud Community's depositors, upon which the RICO charge is based, ended on or about February 28, 1986. As a result, the activity at issue clearly does not "by its nature project[ ] into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902. The Court must next look to whether the closed period of conduct charged in the original indictment extended over "a substantial period of time," keeping in mind the Supreme Court's admonition that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." 492 U.S. at 242, 109 S.Ct. at 2902.

Each of the six possible predicate acts in this case involved a transfer of funds which, for the purposes of this portion of defendant's motion, the Court will assume furthered the overall scheme to defraud Community's depositors. The earliest transfer, described in Count 6, allegedly occurred on or about February 20, 1985. The final two transfers, described in Count 1, overt acts 22 and 23, allegedly occurred on or about November 26, 1985. Thus, the maximum possible span of the predicate acts with which Crysopt is charged is slightly more than nine months.

The Fourth Circuit, prior to the Supreme Court's decision in *H.J. Inc.*, held in a variety of cases that RICO patterns had not been established. In the most extreme example, *Walk v. B & O Railroad*, 847 F.2d 1100 (4th Cir.1988), *vacated*, 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989), *on remand*, 890 F.2d 688 (4th Cir.1989), the Fourth Circuit originally held that alleged racketeering activity against a class of minority stockholders which extended over a closed period of ten years failed to satisfy the continuity requirement because it involved a single scheme that no longer posed an ongoing threat. 847 F.2d at 1105.

---

**18.** The Court notes Crysopt's additional position that none of the alleged predicate acts of racketeering activity actually constitutes wire or mail fraud because each concerns a transfer of funds which occurred after the completion of any fraudulent scheme by defendants. However, as the Court has stated more fully in its oral opinion addressing the non-RICO counts challenged by Crysopt, the Court is unable to find as a matter of law the exact point in time at which the alleged scheme must necessarily have reached fruition. Accordingly, the Court cannot find that the various transfers in question could not possibly constitute predicate racketeering acts.

In the wake of the *H.J. Inc.* decision, the Supreme Court vacated and remanded *Walk* to the Fourth Circuit for further consideration. 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989). On remand, the Fourth Circuit reversed its prior holding, and found that, though the allegations concerned a single, closed-ended scheme, they extended over a period of time substantial enough to satisfy the continuity requirement as illuminated by the Court in *Walk v. B & O*, 890 F.2d at 690 (citing *H.J. Inc.*, 492 U.S. 229, 250, 109 S.Ct. 2893, 2906. Similarly, in *Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir.1990), the Fourth Circuit found that a ten-year scheme to repeatedly defraud up to one hundred salesmen of earned commissions satisfied the continuity requirement. 896 F.2d at 836 n. 2; *see also Morley v. Cohen*, 888 F.2d 1006, 1010 (4th Cir.1989) (holding that five-year, closed ended scheme satisfied continuity requirement).

At the other end of the spectrum, the Fourth Circuit has declined to find RICO pattern continuity in closed-ended schemes lasting only three or four months. *Eastern Publishing and Advertising Inc. v. Chesapeake Publishing and Advertising, Inc.*, 831 F.2d 488 (4th Cir.1987), *vacated*, 492 U.S. 913, 109 S.Ct. 3234, 106 L.Ed.2d 582 (1989), *on remand*, 895 F.2d 971, 973 (4th Cir.1990) (reaffirming its holding, after remand by Supreme Court in light of *H.J. Inc.*, that closed-ended scheme extending over three months failed to satisfy continuity requirement); *Parcoil Corp. v. Nowsco Well Service, Ltd.*, 887 F.2d 502, 504 (4th Cir.1989) (holding that seventeen falsified reports sent over four months did not establish continuity). Finally, the Court notes that in *Menasco*, the Fourth Circuit held that no RICO pattern had been pled by plaintiffs who had allegedly lost money in Texas oil development investments as a result of defendants' deceit, negligent misrepresentation and breach of contract over the course of one year. 886 F.2d at 684.

■ While the overall fraudulent scheme alleged in the instant case is grand in scale, the Court must look to the predicate acts with which Crysopt itself is charged in determining whether a pattern of racketeering activity may be established against it. In this regard, the Court expressly rejects the government's position that the continuity requirement is applied to the RICO enterprise's predicate acts as a whole, rather than to the individual acts of a single defendant.[19] Section 1962(c) expressly proscribes "any *person*" from conducting the affairs of an enterprise *through* a pattern of racketeering activity. The predicate acts are thus undertaken by the person and not the enterprise. In *United States v. Persico*, the second circuit held that, in order to satisfy the statute of limitations, the government had to prove that the particular RICO defendant committed a predicate act of racketeering within the five years of the indictment's return, and that it was insufficient to prove that a different RICO co-defendant committed a predicate act within that period.

> The focus of section 1962(c) is on *individual patterns of racketeering engaged in by a defendant*, rather than the collective activities of the members of the enterprise, which are prescribed by section 1962(d). We reject the government's attempt to analyze section 1962(c) as if it were a second conspiracy statute.

832 F.2d at 714 (emphasis added); *see United States v. Salerno*, 868 F.2d 524, 534 (2nd Cir.) *cert. denied sub nom. Furnari v. United States*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700, *and cert. denied Indelicato v. United States*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989); *United States v. Walsh*, 700 F.2d 846, 851 (2nd Cir.), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). The Court agrees with this reading of § 1962(c), and finds it inappropriate to look beyond those predicate racketeering acts with which Crysopt itself is charged.

Even if proven by the government at trial, these acts, which number six at most

---

**19.** The government made this argument for the first time in its response to the motion filed by Crysopt following return of the superseding indictment. However, it appears just as applicable to the original indictment and will therefore be discussed in that context.

and extend only over a nine month period, simply fail to satisfy the continuity element of the "racketeering pattern" test which continues its awkward development in the federal courts. In making this determination, the Court is mindful of the Supreme Court's admonition in *H.J. Inc.* that "when Congress said predicates must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity." 492 U.S. at 243 n. 4, 109 S.Ct. at 2902 n. 4 (rejecting view in concurrence that very short periods of repeated criminal activity not carrying the threat of continuation "constitute 'obvious racketeer[ing]' to which Congress intended RICO" to apply). In light of the foregoing analysis, the Court finds that the RICO charge against Crysopt in Count 20 of the original indictment would be invalid even if the indictment met the requirements relating to the RICO "enterprise" discussed above.[20]

Because the RICO charge in the original indictment was not validly pending when the superseding indictment was returned, the Court finds that the new RICO charge is time-barred and must be dismissed for that reason alone. However, the Court notes that the government appears empowered, under 18 U.S.C. § 3288, to present the case to yet another grand jury in an effort to seek a proper RICO indictment.[21] Under the circumstances, the Court feels compelled to express its view that Count 20 of the superseding indictment, had it been returned in a timely manner, would nonetheless have failed to allege facts sufficient to support a conviction under § 1962(c).

■ The superseding indictment's shortcomings are all but identical to those of the original indictment. The same maximum of six predicate racketeering acts are alleged therein, and they still fail to support a pattern of racketeering activity under current judicial interpretations of RICO. The only major change in the new Count 20 is that Billman and Crysopt have been taken out of the alleged RICO enterprise, which consists of *"the subsidiaries of Crysopt Corporation,* and Epicenter Consolidated, Ltd., EPIC Holdings, Ltd., Equity Acquisitions, Inc., Community Savings & Loan, Inc., Community Financial Services, Inc., Equity Programs Investment Corporation, EPIC Mortgage, Inc., EPIC Securities, Inc., EPIC Residential Network, Inc., Prune, Inc., and Plum, Inc." (emphasis added). While the removal of Crysopt and Billman from the enterprise itself solves one of the shortcomings noted by the Court above, it still leaves the new Count 20 fatally flawed because of clear Fourth Circuit precedent stating that corporations and fully-owned subsidiaries are not sufficiently distinct under RICO that one may be the defendant and the other enterprise. *NCNB National Bank v. Tiller,* 814 F.2d at 936; *United States v. Computer Sciences Corp.,* 689 F.2d at 1190; *Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.,* 819 F.2d at 1287.

The government attempts to avoid this extensive body of Fourth Circuit law by arguing that the enterprise is rendered distinct from Crysopt by the addition of numerous entities which are not owned by Crysopt. There is absolutely nothing in the cases cited above which would suggest that diluting an invalid enterprise allegation with additional corporate entities renders it valid. In fact, the *In re EPIC Mortgage Ins. Litigation* case, discussed above, reached a contrary conclusion in just

---

**20.** Because of the Court's rulings concerning both the "enterprise" and "RICO pattern" requirements, Crysopt's argument that RICO's proscriptions are unconstitutionally vague as applied in this case need not be addressed.

**21.** Section 3288 does not allow the return of a new, otherwise-untimely indictment after the preceding indictment has been dismissed because it was filed outside the statute of limitations. 18 U.S.C. § 3288. Accordingly, the government could not seek re-indictment on the

basis of the Court's dismissal of the superseding indictment as time-barred. However, because the Court has ruled that Count 20 of the original indictment is not valid, dismissal of that count will be granted, and the government could presumably seek a third indictment on the RICO issue alone. In making this observation, the Court certainly does not mean to imply that a third attempt to obtain a valid RICO charge would be appropriate where the government has twice failed.

such a situation. The court held that no enterprise was stated where Community was the allegedly liable person and Community's subsidiary, EPIC, was part of the alleged "association in fact" enterprise. 701 F.Supp. at 1252. Moreover, the Court notes that this same argument would appear to have applied to the original indictment, which the Court has already found invalid. The superseding indictment fairs no better on this ground.

Finally, the Court questions how the "association-in-fact" enterprise alleged in the superseding indictment could possibly exist. One might envision the association-in-fact alleged in the original indictment as a wheel with Billman at its center and spokes radiating out to the various corporate entities under his control. Thus, the removal of Billman from the enterprise in the superseding indictment, while it cured one infirmity, may well have caused another by taking away the one connection by which many of the other parts of the association were, in fact, "associated". The case law defining "association-in-fact" enterprises under RICO is even less illuminating than that concerning racketeering patterns and the distinctness of the defendant from the enterprise. However, common sense suggests that the association alleged in the superseding indictment may well collapse out of existence without Billman at its center. As a result, the government is placed in a theoretical conundrum. It cannot name Crysopt or Billman as part the enterprise which they allegedly controlled. Yet, the "association-in-fact" whose existence the government must establish at trial existed only by virtue of the fact that Billman, through Crysopt, directed the affairs of both the EPIC Holdings line of companies and the separate group of Crysopt's subsidiaries. This paradox appears symptomatic of the underlying problems in the government's attempts to fit this case within the confines of current RICO law.

For all of the foregoing reasons, the Court will GRANT both Crysopt's Motion to Dismiss Counts One, Three, Six, Seven, Eight, Nine, Ten, Eighteen, Nineteen and Twenty of the Indictment and its Motion (i) to Dismiss the Superseding Indictment in its Entirety as Barred by the Statute of Limitations; and (ii) to Dismiss Counts One, Three, Five, Six, Seven, Eight, Nine, Ten, Eighteen, Nineteen and Twenty for Failure to Charge an Offense, only to the extent that they relate to the RICO charge against Crysopt contained in Count 20 of both the original and superseding indictments. Crysopt argues that the dismissal of Count 20 should be with prejudice. However, while the Court does not feel that a third attempt by the government on the RICO issue would be appropriate at such a late stage of these tortured proceedings, 18 U.S.C. § 3288 contains no apparent limit on the number of times re-indictment may be sought. Dismissal with prejudice would seem to be contrary to the statute's express language, and will therefore be denied. A formal Order has been entered in conformity with this Memorandum Opinion.