**Thomas PARK, et al.**

v.

**JACK'S FOOD SYSTEMS, INC., et al.**

**No. 95–1410.**

United States District Court,
D. Maryland.

Nov. 20, 1995.

Michael D. Sendar, Georgetown, Washington, DC, for plaintiff.

Leonard C. Greenebaum, Shelby F. Mitchell, Paul F. Kirgis, Washington, DC, for defendant.

## MEMORANDUM

MOTZ, Chief Judge.

Thomas Park, Chris Collingwood, and Karl Evangelisti have brought suit against Jack's Food Systems, Inc., J.F.S., Inc. ("J.F.S."), Jerry's Systems, Inc. ("Jerry's"), Adam Schwartz, George Palmer, and John Nickum. Plaintiffs assert several claims, including violations of 18 U.S.C. § 1962(c), common law causes of action for breach of contract and fraud, and violations of Maryland's Franchise Law. This court has federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964, and supplemental jurisdiction over the state law claims.

Defendants have moved for dismissal under Fed.R.Civ.P. 12(b)(6) of the RICO and Maryland Franchise Law claims (Counts I, II, and IV) for failure to state claims upon which relief can be granted. They have moved for summary judgement on the breach of contract and fraud counts (Counts III and IV).

In my judgment plaintiffs have failed to allege facts sufficient to meet the continuity prong of "pattern" as established by the Fourth Circuit. Therefore, I will dismiss plaintiffs' RICO claim pursuant to Rule 12(b)(6). Since that is the only federal claim that plaintiffs have asserted, I will decline to exercise my supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367.

### I.

In December 1988, Jordie Fainberg bought Jack's Famous Delis ("JFD") franchises from Defendant Jack's Food Systems, Inc., a Maryland Corporation owned by Defendant Adam Schwartz.[1] Jack's Food Systems originally acquired the JFD franchises from Jack's of Lombard Street, Inc. ("Lombard"), and Schwartz still remains liable on a

---

1. My statement of the facts is based upon the allegations in the Amended Complaint.

promissory note made to Lombard. As part of the purchase arrangement, Fainberg and JFD assumed Schwartz's promissory note obligation to Lombard and signed an additional promissory note to Jack's Food Systems. Am.Compl. at ¶ 10. As security, Jack's Food Systems retained rights in JFD, including the right to receive franchise fees and to exercise control over JFD in case of default. *Id.*

Schwartz also is the president and owner of Defendant Jerry's, which markets Jerry's Sub franchises along the east coast, and Defendant J.F.S., which is based at Jerry's headquarters and which was allegedly formed for the purpose of receiving the assets of Jack's Food Systems. *Id.* at ¶ 8. Defendants George Palmer and John Nickum were employees of JFD in charge of marketing and selling JFD franchises. They simultaneously worked for Schwartz at Jerry's, marketing Jerry's Subs franchises. *Id.* at ¶ 12.

Fainberg began to market JFD franchises in early 1989 by advertising throughout Washington, D.C., and by sending out franchise offering circulars and information packets called "Financial Facts" to prospective franchisees. In late spring 1990, JFD began to experience serious financial problems which jeopardized its ability to meet its obligations under both promissory notes. Am. Compl. at ¶ 16; *see also* Pls.' Ex. 1. Schwartz, through his corporations Jack's Food Systems and Jerry's, allegedly took control at this time over all JFD operations pursuant to the purchase agreement. Am. Compl. at ¶ 17. It is alleged that Schwartz then orchestrated a scheme to defraud future JFD franchisees through salesmen Nickum and Palmer by misrepresenting and omitting facts about JFD's deteriorating financial condition, financing options, site availability, and refund policies.

Plaintiffs Thomas Park and Karl Evangelisti responded to advertisements for JFD franchises, and Plaintiff Chris Collingwood responded to an advertisement for a Jerry's Subs franchise. After various contacts with Defendant Palmer over the telephones, through the mails, and face-to-face meetings, plaintiffs entered into franchise agreements with JFD in November 1990, August 1991, and July 1991. Plaintiffs aver that Nickum and Palmer fraudulently misrepresented the financial viability of JFD, the availability of suitable sites for the franchises, the willingness and ability of JFD to provide financing, and the refund policies regarding the $25,000 franchise fee. Defendants pressured the plaintiffs into paying the full franchise fees at the time of the agreement rather than at the time of site selection as they had previously. Am.Compl. at ¶ 20. This, according to the Complaint, was intended to enhance short-term revenues before JFD's imminent financial collapse. *Id.* at ¶ 18.

The Complaint avers that Schwartz, as a financially interested creditor in JFD, directed all of this through his various corporations. *Id.* at ¶¶ 17, 18, 22. The alleged scheme lasted until March 1992 when Jack's Food Systems foreclosed on JFD, eighteen months in total. *Id.* at ¶ 42. Jack's Food Systems purchased the assets of JFD at the foreclosure sale and then transferred these assets to a new corporation, J.F.S., which presently operates the JFD franchise system. Park, Collingwood, and Evangelisti never obtained sites for their franchises and thus never opened a Jack's Famous Deli. Their franchise fees have not been refunded. Plaintiffs assert that fifteen other prospective franchisees in the Washington, D.C. area were similarly defrauded. Am.Compl. at ¶ 44.[2]

## II.

Plaintiffs contend that over an eighteen month span each defendant associated himself or itself with an enterprise engaged in interstate commerce and participated in such enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). In Count I, the plaintiffs aver an association-

---

**2.** Plaintiffs have filed a Motion for Leave to File Declarations by Other Alleged Victims. The declarations state that misrepresentations similar to the ones alleged by plaintiffs here were made to the affiants as well. Although these declarations provide support for the allegations made in the Amended Complaint, they do not broaden those allegations in any material respect. Accordingly, plaintiffs' motion requesting leave to file them will be denied as moot.

in-fact enterprise consisting of the named defendants. In Count II, plaintiffs claim that JFD was the enterprise, and that the named defendants participated in JFD and conducted its affairs through a pattern of racketeering activity.

### A. Pleading Predicate Acts Under RICO

18 U.S.C. § 1962(c) prohibits the participation by persons in the affairs of an enterprise through a pattern of racketeering activity.[3] "Racketeering Activity" is broadly defined to include the commission of several federal statutory and state common law offenses. 18 U.S.C. § 1961(1). These "predicate acts" include mail fraud[4] and wire fraud[5] in violation of federal law. *Id.*

Plaintiffs claim RICO liability in that the defendants committed mail and wire fraud in carrying out a scheme to defraud prospective JFD franchisees. Am.Compl. at ¶ 47, 50. Defendants submit that with respect to each defendant, the plaintiffs have not alleged the requisite two predicate acts to maintain a RICO suit.

### 1. Defendants George Palmer and John Nickum

■ Whatever may constitute a "pattern" (*see infra*), it is indisputable that to maintain a section 1962(c) action, at least two predicate acts must be pleaded against each defendant. 18 U.S.C. § 1961(5); *Morley v. Cohen,* 610 F.Supp. 798, 811–12 (D.Md.1985) (citing *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1061 (4th Cir.1984) (J. Winter)); *Temporaries, Inc. v. Maryland Nat. Bank,* 638 F.Supp. 118, 121 (D.Md.1986). With respect to both George Palmer and John Nickum, at least two predicate acts are clearly alleged.

■ The Complaint states that in September 1990, Palmer telephoned plaintiff Park regarding the possibility of Park owning a JFD franchise and that he misrepresented the financial condition of JFD. *See* Am. Compl. at ¶ 31. Subsequently, Palmer mailed to Park the information packet which fraudulently overstated JFD's financial viability. *Id.* at ¶¶ 12, 14, 31. In February 1991, Palmer telephoned Plaintiff Collingwood advising him that it would be more advantageous to consider purchasing a JFD franchise rather than a Jerry's Subs franchise at a time when JFD was in poor financial condition. *Id.* at ¶ 36. Palmer called Collingwood again in furtherance of the alleged scheme and mailed Collingwood the "Financial Facts." *See id.* at ¶ 37. Palmer also fraudulently misrepresented to Plaintiff Evangelisti the financial condition of JFD over the phone. Am.Compl. at ¶ 40. The Complaint therefore sufficiently alleges the threshold requirement of predicate acts as to Palmer.

As to Nickum, plaintiffs claim that in late July 1991 Nickum made several fraudulent telephone calls to Collingwood regarding financing options. *Id.* at ¶ 37. Furthermore, between August and November 1991, Nickum mailed monthly flyers called "Locations Under Review" in furtherance of the scheme. *Id.* at ¶ 41. He also mailed a letter to Evangelisti in November 1991 telling him to seek a location on his own, after Evangelisti had been assured a location would be found for him. *Id.* at ¶¶ 41, 40. Finally, the Complaint alleges that fifteen others in the Washington, D.C. metropolitan area were defrauded in the same way by the same defendants. Am.Compl. at ¶ 44. The threshold of predicate acts has been pleaded with respect to Nickum as well.[6]

---

3. "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

4. 18 U.S.C. § 1341.

5. 18 U.S.C. § 1343.

6. Defendants further contend that the alleged predicate acts and other aspects of the wire and mail fraud have not been treated with sufficient particularity under Fed.R.Civ.P. 9(b). This contention is clearly without merit. The Complaint specifically alleges how Nickum and Palmer carried out the scheme to defraud each potential franchisee out of $25,000, a scheme that plaintiffs contend was orchestrated by Adam Schwartz through his various corporations. Plaintiffs aver that this scheme began in late spring of 1990 and continued through 1991,

### 2. Defendants Adam Schwartz, Jack's Food Systems, J.F.S., and Jerry's

Schwartz, J.F.S. and Jerry's contend that even if the predicate acts are sufficiently alleged against Nickum and Palmer, the Complaint does not contain averments that they personally committed any predicate acts. Defendants argue that plaintiffs are trying to impute liability for the predicate acts of Nickum and Palmer to Schwartz and the corporate defendants since the latter were part of the RICO "enterprise." Defs.' Mem.Supp. at 4–6. Such imputed liability, they assert, is prohibited under Judge Black's decision in *United States v. Crysopt Corp.*, 781 F.Supp. 375 (D.Md.1991).

In *Crysopt*, the government contended that in determining whether a corporate defendant engaged in a pattern of racketeering activity, the court could consider the predicate acts of the "enterprise" as a whole, not merely the predicate acts committed by the corporate defendant itself. *See id.* at 384. Judge Black rejected this position and held that in order to establish pattern against the corporation, the court could only look at the predicate acts committed by the corporation, not the predicate acts of its co-defendants engaged in the same scheme and enterprise. *Id.* "Section 1962(c) expressly proscribes 'any *person'* from conducting the affairs of an enterprise *through* a pattern of racketeering activity. The predicate acts are thus undertaken by the person and not the enterprise." *Id.*

There is no indication in Judge Black's opinion that in *Crysopt* the government was relying upon an aiding and abetting theory to attribute to the corporation the predicate acts of its co-defendants. It would have been difficult for the government to do so since a corporation can act only through its agents. Here, however, plaintiffs do rely upon an aiding and abetting theory, and it is well supported in the law.

■ The Supreme Court and the Fourth Circuit have long held that to be convicted of mail fraud under 18 U.S.C. § 1341, one need not do the actual mailing. *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954); *United States v. Odom*, 736 F.2d 104, 109 (4th Cir.1984). Section 1341 requires proof of three elements: (1) the defendant *knowingly* participated in the scheme to defraud, (2) mails were used to implement the scheme, and (3) the use of the mails was *"caused"* by someone connected with the scheme. *Odom*, 736 F.2d at 109. "It is plainly not necessary ... that the one charged be the one who physically did the mailing; it is sufficient that the mailing was by 'someone connected with the scheme.'" *Id.*

■ Other courts have extended this reasoning to civil RICO cases involving mail and wire fraud as the underlying predicates. *See eq. R.E. Davis Chemical Corp. v. Nalco Chemical Co.*, 757 F.Supp. 1499, 1513–14 (N.D.Ill.1990). In *Davis*, the court held that as long as the complaint properly alleges defendant's participation in a scheme to defraud, each defendant can be held liable for the mailings and telephone communications in furtherance of the scheme, regardless of whether they actually did the mailing or made the telephone calls. *Id.* at 1513. Each mail and phone communication can be deemed a predicate act committed by *each* defendant for RICO purposes. *Id.* at 1514.

Still other courts have more explicitly adopted an aiding and abetting theory in civil RICO cases. *See Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485–86 (5th Cir.1986) (aiding and abetting liability in civil RICO where defendant actively participated in scheme to defraud through mails even though did not mail himself); *Petro-Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1357 (3rd Cir.1987) (defendant responsible for aiding and abetting predicate acts of another); *Laterza v. American*

---

roughly eighteen months. *See* Am.Compl. at ¶ 18. Moreover, plaintiffs state the actual time and content of several phone and mail communications. *See id.* at ¶¶ 31–41. In this regard the Amended Complaint is more specific than the complaint in *Windsor Associates, Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D.Md.1983), which this court found to be "sufficiently laden with particulars" to meet the requirements of Rule 9(b).

*Broadcasting Co.*, 581 F.Supp. 408, 412 (S.D.N.Y.1984).[7]

Against the background of these authorities, I find that the Amended Complaint alleges facts sufficient to hold Schwartz, Jack's Food Systems, J.F.S. and Jerry's liable as aiders and abettors, for the predicate acts of Nickum and Palmer.

3. *Pattern of Racketeering Activity*

█ It is not enough that plaintiffs have made specific allegations of the commission of two predicate acts with respect to each defendant. A Complaint must also aver that the defendants engaged in a *pattern* of racketeering activity. "[W]hile two acts may be necessary [to establish "pattern"], they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, the Supreme Court's most recent pattern decision, the Court elaborated on *Sedima's* "Footnote Fourteen" pattern discussion. 492 U.S. 229, 236–50, 109 S.Ct. 2893, 2899–2906, 106 L.Ed.2d 195 (1989). Establishing pattern requires a showing of relationship and continuity. *Id.* at 239, 109 S.Ct. at 2900. The relationship prong requires proof that the alleged predicate acts " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' "[8] *Id.* at 240, 109 S.Ct. at 2901

(quoting Dangerous Special Offender Sentencing Act 18 U.S.C. § 3575(e)). Continuity is essentially a temporal concept. *Id.* at 241–42, 109 S.Ct. at 2901–02. Continuity itself can be established in one of two ways: either by showing a *closed* period of repeated criminal conduct extending over a substantial period of time, or by showing past conduct that by its nature is opened-ended and threatens future criminal activity. *H.J., Inc.*, 492 U.S. at 241–42, 109 S.Ct. at 2902. Predicate acts extending over a few weeks or months and threatening no future criminal conduct does not satisfy the continuity requirement. *Id.* at 242, 109 S.Ct. at 2902.

█ The Fourth Circuit has taken a strict view toward the pattern requirement. "Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences [of the RICO statute]." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir.1989). In determining whether the racketeering activity is continuous, the Fourth Circuit places heavy emphasis on whether such conduct threatens *future* criminal activity which will have long term and widespread consequences *See id.* at 684; *Crysopt*, 781 F.Supp. at 383; *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir.1988). But even if a scheme is close-ended and poses no future threat, continuity may still be established if the scheme occurred over a substantial period of time. *See Crysopt*, 781

---

7. One court in the Fourth Circuit also recently addressed aiding and abetting liability. *See Clark v. Milam*, 847 F.Supp. 409, 415–17 (S.D.W.Va.1994). There, the court held that although defendants did not engage in predicate acts to be directly liable under RICO, their actions in concealing the alleged conspiracy were sufficient enough to be considered within the meaning of "participation" under section 1962(c). *See id.* at 417.

In reaching its conclusion, the court reasoned that use of the term "aiding and abetting" is not helpful because it is "the quantity and quality of the defendant's participation in the RICO enterprise that must be evaluated." *Clark*, 847 F.Supp. at 417. Rather, the court reasoned as the Supreme Court recently did in *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), that the word "participate" does not require that a defendant have primary responsibility for the RICO enterprise's affairs, but only some part in directing the enterprise. *Clark*, 847 F.Supp. at 415 (citing *Reves*, 507 U.S. at 178–79, 113 S.Ct. at 1170).

The *Clark* Court did point out that *Reves* did not directly address, and does not preclude, aiding and abetting liability under RICO. *Clark*, 847 F.Supp. at 415. In this case, no issue exists regarding whether the Complaint sufficiently alleges Defendants Schwartz, Jack's Food Systems, J.F.S. and Jerry's "participated" in the enterprise; they allegedly were at its very center. The issue is whether they engaged in predicate acts, hence "racketeering activity."

8. Defendants do not contest that the alleged predicate acts satisfy the relatedness prong. The alleged acts are clearly related in that they were committed in furtherance of the same goal (to defraud prospective JFD franchisees out of $25,000), against the same victims (prospective JFD franchisees), and using the same methods of commission (mail and wire fraud, and in-person contacts). The Amended Complaint alleges predicate acts that are not isolated occurrences, but rather part of a coherent scheme to defraud.

F.Supp. at 384. A scheme is close-ended and threatens no future conduct if there is an inherent limitation such that the scheme comes to an end before suit, and before outside investigation. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 770 F.Supp. 1053, 1077 (D.Md.1991).

■ The Fourth Circuit has adopted a case-by-case, fact specific approach in determining whether the continuity requirement is met. Several factors are considered, including: the number and variety of predicate acts, the length of time over which they were committed, the number of putative victims; the presence of separate schemes, and the potential of multiple distinct injuries. *See e.g. Brandenburg,* 859 F.2d at 1185.

In this case, the plaintiffs allege that defendants engaged in their fraudulent scheme from late spring 1990 through 1991, approximately eighteen months. Am.Compl. at ¶ 18. The Complaint avers the commission of several predicate acts by each defendant against the named plaintiffs, and several more against fifteen unnamed victims. *Id.* at 31–41, 44. The Complaint further asserts a single scheme to defraud prospective JFD franchisees out of $25,000 each. Finally, the scheme alleged is close-ended and threatens no future harm. It ended before investigation and before suit was brought when JFD became insolvent and was sold to Jack's Food Systems at a foreclosure sale. *See id.* at ¶¶ 42, 45.

The question is not an easy one but I am of the view that these allegations are not sufficient to meet the continuity prong of the pattern requirement. Several cases support this conclusion. In *Menasco,* the plaintiffs were defrauded into investing in oil ventures by defendants. 886 F.2d at 682. The court ruled that the plaintiffs failed to establish the continuity prong of pattern. *Id.* at 684. The court reasoned that the scheme involved a narrow and limited purpose, it involved only one perpetrator and two victims, and the transaction took place over one year. *Id.* While the plaintiffs in this case allege five perpetrators, eighteen victims, and an eighteen month duration, these differences alone are not significant enough to distinguish it from the scheme in *Menasco.* Moreover,

like in *Menasco,* the plaintiffs allege a scheme that was limited, close-ended, and threatening no future criminal conduct.

In *Benard v. Hoff,* the plaintiff alleged a scheme that defrauded him out of his intellectual property rights. 727 F.Supp. 211, 212. (D.Md.1989). The scheme involved at least twenty-seven predicate acts of mail and wire fraud, and extended over a period of three years. *Id.* at 216. Judge Niemeyer, then on the District Court, ruled that the plaintiffs failed to establish continuity, reasoning that the scheme was close-ended, not likely to be repeated, with a limited and finite goal. *Id.* at 217. Although there was only one victim and three named defendants in *Benard,* the scheme lasted twice as long as the one alleged in this case. Like in *Benard,* the JFD scheme alleged poses no future threat, no long term and wide ranging effects, and poses no special threat to social well-being.

In *Brandenburg,* plaintiffs averred a large banking scheme which defrauded numerous depositors and was carried out through the mails and over the telephones. 859 F.2d at 1181–83. The district court dismissed the RICO count since the plaintiffs failed to establish pattern, even though the scheme involved 22,000 victims, over a three year period, and perpetrated by several defendants. *Id.* at 1186. The Fourth Circuit refused to affirm the district court's dismissal on the no pattern ruling, opting instead to affirm on other grounds. *Id.* at 1186–87. However, the court did not explicitly reject the lower court's pattern decision. *See id.* at 1186. Although it stated the district court's reasoning was open to serious question, the court said it was a "close one." *Brandenburg,* 859 F.2d at 1186. Since the alleged scheme in *Brandenburg* posed a real threat of future criminal activity, had no limiting goal that would have brought the scheme to an end, and had injured a significant number of victims over a three year period, it seems clear that the Fourth Circuit demands a greater showing of pattern than the plaintiffs have alleged in this case.

Plaintiffs have directed me to a factually similar case outside the Fourth Circuit. In *Giuliano v. Everything Yogurt, Inc.,* plain-

tiffs were franchisees alleging that defendants defrauded them into signing franchise agreements by misrepresenting the costs to be incurred, and the income to be made, through the mails and over the telephone. 819 F.Supp. 240, 243 (E.D.N.Y.1993). The alleged scheme extended over two years and involved at least eight victims. *See id.* at 243. The court held that a pattern had been established by the complaint. *Id.* at 248. However, *Giuliano* can be distinguished on at least two grounds. First, the alleged scheme there extended over two years, while the alleged scheme in this case lasted at most eighteen months. More importantly, the plaintiffs claimed that the defendant's ongoing business was regularly conducted through the fraudulent use of the mails and telephones, and therefore a threat of future criminal activity existed. *See id.* at 248. In this case, there is no future threat. JFD no longer exists, and the alleged close-ended scheme came to a decisive end within eighteen months, and without outside intervention or investigation.

### III.

Complete diversity of citizenship between the parties is lacking. Therefore, the only basis for my retaining jurisdiction over the state law claims asserted by plaintiffs would be that provided by 28 U.S.C. § 1367, the "supplemental jurisdiction" provision. In light of the fact that I have dismissed the only federal claims asserted against defendants, I decline to exercise that jurisdiction pursuant to § 1367(c)(3).[9]

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herewith, it is, this 20th day of November, 1995,

ORDERED:

1. Plaintiffs' Motion for Leave to File Declarations is denied as moot;

---

9. I note that Maryland Rule 2–101(b) protects plaintiffs from any limitations bar that has arisen

2. Counts I and II (the RICO claims) are dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state claims upon which the leave can be granted; and

3. Plaintiffs' remaining claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

while the action has been pending in this court.